MARVIN E. NIEBERG REAL ESTATE
CO., Plaintiff/Appellant,

v.

TAYLOR–MORLEY–SIMON, INC., A Missouri Corporation, Benton Taylor, John Reinhart, Trustee, Mary Walter, Trustee, and Desmond Vig, Trustee, Being All of the Trustees Constituting the Board of Trustees of Sherwood Manor Plats 1 & 2 of Bennington Place, Defendants/Respondents.

No. 62469.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 16, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 16, 1993.

Application to Transfer Denied
Jan. 25, 1994.

Donald S. Singer, Kenneth E. Dick, Edwards, Singer & Wolk, St. Louis, for plaintiff/appellant.

Michael Waxenberg, Susman, Schermer, Rimmel & Shifrin, Clayton, for defendants/respondents.

CRANE, Presiding Judge.

Plaintiff, a subdivision developer, appeals a judgment in favor of defendants, the adjoining subdivision developer and the former and current homeowners' association directors thereof, on plaintiff's claims for damages for obstruction of an easement and trespass and on defendants' counterclaim for an injunction and for equitable contribution towards maintenance and repair of a cross access easement and a temporary access road. We reverse with respect to the denial of nominal damages for trespass and remand the trespass count for findings on whether punitive damages should be awarded. In all other respects the judgment is affirmed.

*Factual Background*

*The Parties*

Plaintiff Marvin E. Nieberg Real Estate Company [Nieberg Company] is a Missouri corporation of which Marvin E. Nieberg [Nieberg] is president. Nieberg Company originally owned a 20.045 acre parcel of land in St. Louis County. In 1963 it had approximately 17 acres of this tract rezoned and developed into the Willowyck Estates Subdivision. It did not rezone and did not provide access to the remaining 3.25 acres of this tract, which became landlocked. *See Marvin E. Nieberg Real Estate Co. v. St. Louis County,* 488 S.W.2d 626 (Mo.1973). At the time of trial, the 3.25 acre parcel had been rezoned for development of nine single family homes to be known as Bennington Common Court. Four of those homes had been constructed or were under construction.

Defendant, Taylor–Morley, Inc. [TMI] (formerly Taylor–Morley–Simon, Inc.) owned a tract of land adjacent to the Nieberg Company parcel which it developed into a 45 home Planned Environment Unit Development known as Sherwood Manor. Defendant Benton Taylor is chairman of the board of TMI and a former director of Sherwood Manor. Defendants John Reinhart, Mary Walter and Desmond Vig are directors of the Sherwood Manor Homeowners Association

pursuant to the Sherwood Manor declaration of trust. Article X, Section 10 of the declaration of trust provides that the subdivision Homeowners Association "shall have the authority for itself and on behalf of the Lot Owners to enter into and to enforce any terms and conditions expressed in any access easement, road maintenance agreement." The trial defendants are sometimes collectively referred to in this opinion as "defendants."

*Chronology*

In 1987, TMI obtained approval for the rezoning of its property to develop the Sherwood Manor Subdivision. The rezoning resulted in the creation of two easements. The first easement was a non-exclusive cross access easement over the private roadways of Sherwood Manor to provide access to the Nieberg Company 3.25 acre tract, as required by a St. Louis County zoning ordinance. In compliance with the ordinance, TMI executed and recorded on its Sherwood Manor plat a grant of a non-exclusive easement over its three private roadways favoring the Nieberg Company property. TMI also constructed a stub street leading up to the Nieberg Company property at its own cost. The recorded easement does not address who is obligated to maintain and repair the easement roadways.

The second easement connects Sherwood Manor to a public road. This easement was created pursuant to an Easement Deed and Agreement between the Missouri Highway Commission and TMI. Prior to the creation of this easement, TMI dedicated approximately 10 acres of vacant land between Sherwood Manor and the public road to the State of Missouri as a condition to its rezoning for the Sherwood Manor development. TMI received no compensation for the land, worth approximately $350,000 in 1987, but was relieved of a traffic generation assessment. The state, in return, granted TMI an easement across this property from Sherwood Manor to the public road. TMI, as grantee, was responsible for constructing, repairing, maintaining, and replacing a temporary access road upon the easement over the state property. In accordance with the easement

deed and agreement, TMI constructed the temporary access road at its own cost.

The temporary access road is a 'Y' shaped road which runs from a public street southward and subsequently divides into two branches. One branch leads to Sherwood Manor and the other branch leads to another subdivision, Sherwood Place. Under the Easement Agreement and Deed, the Sherwood Manor subdivision homeowners are responsible for the payment of 100% of the maintenance and repair costs of their branch of the temporary access road and 27% of the maintenance and repair costs of the remaining portion of the temporary access road. Sherwood Place subdivision homeowners (who are not parties to this action) are responsible for the other 73% of maintenance of this portion of the road. The easement agreement also provides that if Sherwood Manor or Sherwood Place owners allow adjacent property owners to use the temporary access road, then these owners are responsible for negotiating the financial terms of any such agreement.

Subsequently, Nieberg Company sought to rezone its 3.25 acre tract to develop the Bennington Common Court Subdivision. Nieberg knew of the recorded easement in Nieberg Company's favor on the recorded Sherwood Manor plats. Nieberg Company was not a party to the Easement Deed and Agreement relating to the easement across state property. In late 1987, Nieberg was advised by St. Louis County that, as a condition to the rezoning, Nieberg Company would be required to enter into an agreement to share in the maintenance of the cross access easement over the Sherwood Manor roadways. Nieberg protested this condition to rezoning. At a public improvement committee meeting held on May 12, 1988, a representative of the County Counselor's office stated that the adjacent owners' agreement on maintenance was a private matter and it would not be appropriate to include it in the ordinance. The maintenance agreement requirement was then deleted from the Bennington Common Court zoning ordinance. Prior to this time, TMI's agents had had conversations with Nieberg about assessing the Nieberg Company property for road maintenance. After the deletion of the provision from Nieberg Company's zoning ordinance, Nieberg refused to pay any assessment.

Nieberg Company began construction of the Bennington Common Court subdivision in about March 1989. Taylor, upon learning that Nieberg Company planned to begin construction, ordered one of his employees to construct a barricade across the easement. Although Taylor was aware of Nieberg Company's easement rights, he had access to the Nieberg Company property blocked in order to compel Nieberg Company to agree to contribute to the easement's maintenance and repair.

The barricade obstructing the easement was constructed on about March 31, 1989 and was located two feet across the Nieberg Company property line. Nieberg became aware of the barricade and removed it on about May 15, 1989. After removal of this barricade, Nieberg Company began excavating its first lot. Taylor then instructed his employee to block the street each evening with project dump trucks and to install a second barricade. The employee first blockaded the stub street with trucks and then constructed a wood and chain barricade. The trucks and the barricade were located on the easement, outside the Nieberg Company property line. This second barricade remained in place until director Reinhart removed it between February 20 and 22, 1991.

*Proceedings Below*

On June 9, 1989 Nieberg Company filed an action against TMI and Taylor. The individual directors were subsequently named as defendants on January 22, 1991. As finally amended, the petition sought actual and punitive damages for interference with and obstruction of an "easement/nuisance" (Count I) and for trespass (Count II). It also contained three other counts, however, Nieberg Company voluntarily dismissed Counts III and IV without prejudice after trial and did not submit Count V for decision.

Defendants filed a counterclaim for a preliminary and permanent injunction and for contribution to the maintenance of the cross access easement. During trial defendants

obtained leave to amend the counterclaim to add a claim for contribution to the maintenance of the temporary access road over the property dedicated to the state.

After a bench trial, the trial court issued findings of fact, conclusions of law and a judgment in favor of defendants on both the second amended petition and the amended counterclaim and entered an order granting a permanent injunction on the amended counterclaim. The trial court found that Nieberg Company "has an obligation to share in proportionate, reasonable future maintenance of the private streets in and leading to Sherwood Manor." It ordered the property in the Bennington Common Court subdivision to be assessed 16.67% of the reasonable authorized expenses for the maintenance of the private streets in Sherwood Manor and 16.67% of Sherwood Manors' share of reasonable authorized expenses for the maintenance of the temporary access road. Nieberg Company appeals from these orders.

### Appeal

On review of a civil court-tried case, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); Rule 73.01(c). We accept the evidence and inferences favorable to the judgment and disregard all contrary evidence. *Behen v. Elliott*, 791 S.W.2d 475, 476 (Mo.App.1990).

Nieberg Company has raised nine points of error. For clarity we have grouped them into issues that relate to the judgment on the counterclaim and issues that relate to the judgment on the petition.

### I.

### Issues Relating to Judgment on Counterclaim

#### A. Maintenance of Easements

Nieberg Company raises two points of error (points one and seven) with respect to the court's findings and order relating to maintenance of the easement. At the outset we note that point one fails to comply with Rule 84.04(d).

In point one Nieberg Company asserts:

The trial court erred as a matter of law in applying equitable contribution under *McDonald v. Bemboom* where respondents attorneys drafted the "cross access agreement" and custom and practice in this area are taken to mean that each party bears their own maintenance.

Rule 84.04(d) requires a point relied on to "state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous." This point does not set forth any action or ruling of the trial court. *Thummel v. King*, 570 S.W.2d 679, 684–85 (Mo. banc 1978). Failure to comply with this requirement is significant in this case because the trial court entered judgment on both a petition and a counterclaim. If Nieberg Company felt that the trial court's conclusion of law (Paragraph 29) which relied on *McDonald v. Bemboom*, 694 S.W.2d 782 (Mo.App.1985), was erroneous or that the trial court's grant of the permanent injunction on the basis of *McDonald* was erroneous, it should have directed its point relied on to that specific ruling. *Thummel*, 570 S.W.2d at 685. Further the point does not specify "why" the ruling was erroneous. It should contain a statement of what Nieberg Company believes should have been the trial court's conclusion of law on the point being addressed. *Id.* Without specifying the ruling or why it is arguably erroneous, Nieberg Company's allegations that defendants' attorneys drafted the cross access agreement and what the custom and practice are in this area have no context and are essentially meaningless. Having failed to comply with Rule 84.04(d), Nieberg Company has not preserved point one for review. *Thummel*, 570 S.W.2d at 684; Rule 84.13(a).

In our discretion we have looked to the argument portion of the brief to determine if there was plain error which would permit relief under either point. In its argument under point one, Nieberg Company contends that the trial court erroneously relied on

*McDonald* to determine whether or not maintenance costs should be assessed against Nieberg Company. The court cited *McDonald* to support its conclusion that Nieberg Company has an obligation to share proportionately in the maintenance of both easements providing access to its property, the private street in Sherwood Manor subdivision upon which plaintiff has a cross access easement and the temporary access road across the state property. We find the trial court properly declared and applied the law.

■ *McDonald* involved a dispute between the owners of a dominant tenement and the owners of a servient tenement over the apportionment of maintenance and repair costs for a private roadway leading to their respective properties. The easement agreement was silent regarding these costs. Citing a number of cases from other jurisdictions, our Western District held that when the agreement creating the easement is silent and where the owners of both the dominant and servient tenements regularly use the private roadway, the cost of repairs and maintenance of a private roadway should be apportioned between the owners of the dominant and servient tenements. 694 S.W.2d at 786. The court affirmed the trial court's money judgment against the owners of the servient tenement for their proportionate share of the costs of repairs and maintenance of the private roadway. *Id.*

As limited by its point relied on, Nieberg Company's arguments are that *McDonald* does not apply because 1) TMI's attorneys drafted the "cross access agreement" and 2) custom and practice in this area dictates that each party is to bear its own maintenance. As to the first argument, Nieberg Company's position is that because TMI's attorneys drafted the agreements between it and the highway department and drafted the language in the recorded plats, but did not mention contribution from Nieberg Company, these documents should be construed as agreements that Nieberg Company was not to pay any share of maintenance. This argument is specious. TMI did not enter into any agreement with Nieberg Company and the silence of the easement or any other document on the apportionment of mainte-

nance cannot be construed as an agreement relating to maintenance.

■ In the absence of an agreement to the contrary, the general rules on duties and rights of the respective tenants control. *Gnau v. Union Electric Co.,* 672 S.W.2d 142, 145 (Mo.App.1984). In this situation, the general rule is that all users should contribute to maintenance in proportion to their use. *McDonald,* 694 S.W.2d at 786. As stated in *Lindhorst v. Wright,* 616 P.2d 450 (Okla.App. 1980), on which *McDonald* relied:

> [W]here the easement owner is not the sole user of a private right-of-way, but uses it in common with the servient tenants, then the costs of repair and maintenance should be distributed among all users in proportions that closely approximate the usage of the parties.... Thus, ... the broader rule, which comes into effect where there are more users, is but a recognition "that the duty of repair should fall where reason, convenience and equity require ..."

*Lindhorst,* 616 P.2d at 454–55. *See also* 25 Am.Jur.2d Easements & Licenses § 85, at 492; 28 C.J.S. Easements § 94(a), at 774.

■ Nieberg Company next contends that in St. Louis County, a "cross access easement" means that each party to an easement is responsible for his own costs. It refers us to the testimony of its expert witness that in the customary practice of the engineering trade, "cross access agreement" is understood to mean that maintenance "is usually assumed by each property owner." That testimony does not demonstrate any custom or practice which would prevent the court from applying well-settled legal principles in determining the users' obligations with respect to maintenance costs of this easement. The trial court did not misinterpret or misapply the law. Point one is denied.

In point seven Nieberg Company asserts error in paragraphs 1B and 5B of the permanent injunction. In those paragraphs the trial court ordered as follows:

> 1B. Reasonable, authorized expenses shall consist of the estimated cost for electricity for street lights, anticipated snow removal, and a reserve for repairs, mainte-

nance and eventual replacement of the surface of the street, over that portion of the private streets located within Sherwood Manor Subdivision that is the shortest, most direct route in lineal feet from the Nieberg Co. property to the entrance of the Sherwood Manor subdivision. Reasonable, necessary expenses may also include actual, out-of-pocket expenses incurred due to unforeseen catastrophic loss, which necessitate special assessments.

5B. Reasonable, authorized expenses for the maintenance of the temporary access roads leading to Sherwood Manor shall include the estimated cost of providing electricity for street lighting, snow removal, a reasonable sum for a reserve to provide for future repair or eventual replacement of the road, and the maintenance of the road, including appurtenances thereto, drainage structure for storm water (excluding sanitary sewers), and roadway slopes. This Order is intended to be in harmony with the allocation of expenses set forth in paragraph 9 of the Easement Deed and Agreement of June 11, 1987, recorded in Book 8198, Page 1912 of the St. Louis County Recorder of Deeds.

In its argument under this point, Nieberg Company contends that the trial court must make a finding of necessity to justify its award of equitable contribution and cites *Rollins v. Schwyhart,* 587 S.W.2d 364 (Mo. App.1979). *Schwyhart* does not pertain to the initial allocation of maintenance expenses, but to the measure of damages where a maintenance agreement has been breached. In any event, it is not inconsistent. In that case a servient tenant sought to recover funds it had expended for fencing property on a right-of-way where the easement holder had breached his agreement to maintain a *cattle guard.* The court held that in the absence of a trial court finding that *fencing* was reasonable or necessary to maintain the roadway, the servient tenant's damages were limited to the cost of maintaining the cattle guards as referred to in the agreement. *Id.* at 366–67. Although the question before it was different from the question before us, *Schwyhart* provides no support to Nieberg Company's argument because the appellate court held the trial court should have found

the expense was *reasonable or necessary.* In this case the trial court determined the maintenance expenses would be *reasonable* and authorized. It did not err in not finding the expenses to be necessary.

Nieberg Company, however, argues that not all of the expenses were reasonable because defendants admitted that Bennington Common Court homeowners' use would not place additional burdens upon the streets. Defendants did admit that the nine units would not put any additional burden regarding certain services, such as on snow removal, planting, mowing, or electricity. However, these services benefited the Bennington Common Court homeowners even if the costs of those services were fixed. The services constituted part of the reasonable maintenance expense to which they could be proportionately required to contribute. The trial court did not commit error, plain or otherwise, in ordering the Bennington Common Court homeowners to share in the listed expenses.

### B. Amendment of Counterclaim

For its fifth point Nieberg Company asserts the trial court erred when it granted defendants leave to file an amended counterclaim during trial because necessary parties were not included, new issues were raised, and defendants' motion to strike Nieberg Company's own amended pleading which raised similar issues had been sustained.

During trial defendants sought leave to amend their counterclaim by interlineation. Previously the counterclaim sought contribution for maintenance of the access streets "owned" by the Sherwood Manor trustees. The amendment added streets "maintained" by the trustees, which would include the temporary access street over the state property. Nieberg Company objected to the amendment because it was filed late, because Sherwood Place homeowners, St. Louis County and the State Highway Commission had not been added as parties, and because it had been denied leave to file its own amended pleadings on this issue. The trial court overruled the objection because the evidence relating to the temporary access road had already been received.

■ The decision of the trial court to allow an amendment of a pleading after trial has commenced is a discretionary matter which we will not overturn unless that discretion has been clearly abused. *Sparks v. Consolidated Aluminum Co.*, 679 S.W.2d 348, 353 (Mo.App.1984). "On appeal, discretionary rulings are presumed correct, and the appellant bears the burden of showing an abuse of discretion." *Anglim v. Missouri Pacific R.R. Co.*, 832 S.W.2d 298, 303 (Mo. banc 1992).

■ Although Nieberg Company makes several arguments under this point, it supports only one argument with authority. We accordingly confine our review to that argument. Rule 84.04(d). *Welch v. Western Casualty & Surety Co.*, 567 S.W.2d 743, 748 (Mo.App.1978). It contends that the other parties to the state-granted easement were necessary parties and should have been joined in the litigation, citing *Lake Sherwood Estates Assn. v. Continental Bank & Trust Co.*, 677 S.W.2d 372 (Mo.App.1984); Rule 52.04(a). In *Lake Sherwood Estates* a homeowners' association sought to collect certain assessments on lots from the developer. We held that the contract purchasers of the lots, who were liable for the subdivision assessments in issue on appeal, were necessary parties. Because the contract purchasers had an obvious interest in the outcome of the action, we reversed. *Id.* at 375.

However, in the present case, neither the Sherwood Place homeowners, the Missouri State Highway and Transportation Commission, nor St. Louis County have any interest which could be impaired by resolution of the issue of whether the Bennington Common Court homeowners were required to proportionately share in defendants' maintenance costs. They were not necessary parties. The trial court did not abuse its discretion in allowing the defendants to amend their pleading during trial.

## II.

*Issues Relating to Judgment on Petition*
*A.  Trial Court's Findings on Credibility and Equitable Defenses*

We next address Nieberg Company's sixth and ninth points challenging the trial court's findings and conclusions relating to credibility and the application of certain equitable defenses to the judgment on the second amended petition. Nieberg Company challenges the following paragraphs from the findings of fact and conclusions of law:

19. This Court finds Marvin Nieberg to be lacking in credibility. The legal problems he has experienced are mostly of his own making, aptly described by the Missouri Supreme Court as a "self-inflicted wound." He has alleged damages arising out of obstruction of easement and trespass which are actually usual and customary development costs, such as engineering and construction expenses. He has engaged in sharp practice by hiring the same engineering firm for construction of Bennington Common Court as Taylor–Morley, Inc. used for construction of Sherwood Manor. He knocked down trees on his property unnecessarily, which diminished the view of Sherwood Manor homeowners, and Mary Walter, a Trustee, in particular. The Court finds all of this conduct to be spiteful and in bad faith.

20. Plaintiff Nieberg Co. chose to sue in equity, and is therefore bound by the equitable doctrines of unclean hands and laches. This Court is empowered to do equity, and is constrained to follow those equitable doctrines.

21. This Court concludes that Plaintiff slept on its rights, and suffered only self-inflicted wounds, and any injury suffered by Plaintiff is barred under the doctrine of laches.

22. This Court concludes that Plaintiff Nieberg Co. is lacking in credibility and has unclean hands as a result of sharp practice and improper motives for its actions.

24. If this were a suit at law instead of equity, the Court might find there was a technical trespass upon the property and rights of Plaintiff which, in strict liability, would result in an award of nominal damages in the sum of one dollar ($1.00). Since Plaintiff chose to bring this action in

**626**

a court of equity, this Court concludes, under the applicable doctrines of equity, that Plaintiff should recover nothing.

25. For the same reasons set forth in paragraph 24 above concerning trespass, this Court concludes that Plaintiff should recover nothing on its claims for obstruction of an easement or nuisance.

Nieberg Company asserts that the credibility findings were not supported by the evidence and that the doctrines of laches and unclean hands are not available defenses to actions and at law.

The trial court found both Nieberg and Nieberg Company lacked credibility. Credibility means capacity for being believed or credited. *State v. Madole,* 347 Mo. 575, 148 S.W.2d 793, 794 (1941). The credibility of a witness is a question for the trier of fact and we defer to the trial court's finding on a witness's lack of credibility. *Brawley v. McNary,* 811 S.W.2d 362, 365 (Mo. banc 1991). We accordingly will not disturb the trial court's finding on Nieberg's credibility. However, credibility is an assessment given to a witness in order to accept or reject that witness's testimony. Nieberg Company was not a witness in the case. The trial court's finding that Nieberg Company is lacking in credibility is essentially meaningless.

We agree that the trial court erred in applying the doctrines of laches and unclean hands. Nieberg Company's submitted claims were actions at law for damages for obstruction of easement and trespass. The doctrine of laches does not apply to defeat an action at law. *Warren v. Warren,* 784 S.W.2d 247, 252 (Mo.App.1989). Likewise, the "clean hands" doctrine does not bar a claim for damages at law. *Kay v. Vatterott,* 657 S.W.2d 80, 83 (Mo.App.1983).

*B. Damages for Trespass*

For its second and eighth points Nieberg Company asserts the trial court erred in not awarding nominal damages for trespass, in not considering punitive damages for trespass, and in finding that Nieberg Company did not suffer financial damage as a result of the trespass. Nieberg Company contends in its second point that, given the defendants'

admission of a trespass when it placed a blockade upon Nieberg Company property, Nieberg Company is entitled to at least nominal damages and that punitive damages were appropriate for the trial court's consideration.

The trial court made a finding of fact that a barricade had been located on Nieberg Company property. As we have set out, in its Conclusions of Law the trial court concluded that Nieberg Company could not recover nominal damages for the trespass because the suit was in equity and equitable doctrines applied. As we have stated, the trespass action was at law and neither laches nor unclean hands applied. Every unauthorized entry is a trespass even if no damage is done. *Vecchiotti v. Tegethoff,* 745 S.W.2d 741, 745 (Mo.App.1987). Nieberg Company is entitled to nominal damages for the trespass. *Id.* Under Rule 84.14 we can "give such judgment as the court ought to give" and modify the trial court order to enter an award of nominal damages. *Vecchiotti,* 745 S.W.2d at 745.

Further, the trial court has discretion to award punitive damages for the trespass where there is "some element of wantonness or bad motive and if one intentionally does a wrongful act and knows it is wrong when he does it, the act is done wantonly and with a bad motive." *Id.* at 744. Here the trial court did not exercise its discretion to determine if punitive damages would be appropriate because it erroneously found Nieberg Company to not be entitled to nominal damages. Accordingly, this case must be remanded for findings on whether Nieberg Company is entitled to punitive damages. Rule 84.14.

Nieberg Company further argues that the trial court erred in its finding that Nieberg Company suffered no financial damages as a result of any trespass. Nieberg Company asserts that the uncontradicted evidence showed that it was denied access to develop its property from March 31, 1989 to February 23, 1991, incurred construction costs and insurance costs and that the fair market rental value of its property was $1,600 per month.

The only trespass alleged and established was the placement of a wood and chain barricade two feet within the Nieberg Company property. This barricade was on the property approximately six weeks. Further, as a matter of law, Nieberg Company had no cause of action in trespass for the barricade subsequently placed on the easement because it did not have the prerequisite possession to maintain such an action. *Gilbert v. K.T.I., Inc.*, 765 S.W.2d 289, 293 (Mo.App.1988). Thus, Nieberg Company's claim for damages for trespass is limited to the six week period the first barricade was on its property.

However, Nieberg Company has not preserved any error relating to trespass damages for our review. In the argument portion of its brief, Nieberg Company points to evidence that the fair market rental value of his property was $1,006 [sic] per month but does not supply us with any legal authority which states what the measure of damages is for trespass. It cites only cases stating what the measure of damages is for obstruction of easement and for wrongfully cutting off electricity. Under these circumstances this point is unreviewable. Rule 84.13(a).

### C. Damages for Obstruction of Easement

For its third point Nieberg Company asserts that the judgment of the trial court should be reversed on Count I because as a matter of law it is entitled to "at least" nominal damages for interference with its easement rights, and punitive damages are appropriate for the trial court to consider.

In its argument under this point, it argues it was entitled to actual and punitive damages under *Gilbert*, 765 S.W.2d at 294, 298. However, Nieberg Company does not provide any authority to support its claim for nominal damages, indicate what the measure of actual damages is, or refer us to any evidence to support its claim for actual damages. Accordingly, this point is unreviewable as to nominal and actual damages and we accordingly cannot reach the question of punitive damages. This point is denied.

### D. Declaratory Judgment Count

Nieberg Company contends the trial court erred in finding for defendants on Count III, its claim for declaratory judgment. On June 15, 1992, by leave of court, plaintiff dismissed without prejudice its Counts III and Count IV. Nieberg Company did not revive Count III prior to the trial court's entry of judgment. Thus, there was no cause of action for declaratory judgment before the trial court. *Skyles v. Burge*, 830 S.W.2d 497, 501 (Mo. App.1992). The court's ruling on Count III had no legal effect. *Id.* There is no appealable order. This point is denied.

### Conclusion

The judgment denying nominal damages on Count II of the amended petition is reversed and a judgment of $1.00 is entered in favor of Nieberg Company on Count II of the amended petition. The judgment denying punitive damages on Count II of the amended petition is reversed and remanded to the trial court for findings on whether punitive damages would lie. In all other respects the judgment in favor of defendants on the second amended petition is affirmed. The judgment in favor of the defendants on the amended counterclaim is affirmed.

KAROHL and CRAHAN, JJ., concur.