**Ruth H. BAKER, Appellant**

v.

**Donna K. HINES and James L. Hines, Appellees.**

No. 2012–CA–000340–MR.

Court of Appeals of Kentucky.

July 19, 2013.

Anna H. Ruth, Ashland, KY, for Appellant.

Patrick M. Hedrick, Ashland, KY, for Appellees.

Before LAMBERT, MOORE, and TAYLOR, Judges.

*OPINION*

LAMBERT, Judge:

Ruth H. Baker has appealed from a judgment and an order of the Boyd Circuit Court relating to the use of an easement and requiring her to share in the costs of improvements to a shared driveway. After careful consideration of the record and the parties' arguments, we reverse and remand.

Ruth Baker is the owner of real property located at 3827 Blackburn Avenue in Ashland, Kentucky, also known as Lot No. 48 of the Hyland Addition. She and her now deceased husband have lived at this property since 1962 when they built their home. In 1989, Baker and her husband along with his brother and wife conveyed the lot next door, 3901 Blackburn Avenue, or Lot No. 49, to Kenneth E. and Esther Whitt. In conveying this property, the conveyors retained an easement in the driveway along the western side of Lot No. 49 for the benefit of Lot No. 48. In 2005, Lot No. 49 was conveyed to James L. and Donna K. Hines (the Hineses), the defendants below and Appellees herein. Accordingly, Baker and the Hineses share a common driveway.

The events giving rise to the underlying lawsuit began in September 2010, when the Hineses dug up all of the grass between the westerly side of the driveway and Baker's home and cut down half of a tree at the corner. Mr. Hines informed Baker that he was erecting a fence on this property, which would be approximately twelve inches from her house. Baker filed a verified complaint and moved for a restraining order and temporary injunction in the Boyd Circuit Court a few days later on September 28, 2010. In her complaint, Baker alleged that her property was being destroyed due to the Hineses' intentional trespass on her property, that she was entitled to a judgment quieting title to the

westerly edge of the existing driveway,[1] and that she would suffer immediate and irreparable harm if the court did not issue a temporary restraining order. The court entered a temporary restraining order that same day, restraining the Hineses from interfering with Baker's use of her real property, including the property between the westerly side of the existing property and her home, and from destroying any private property located on the property.

On October 5, 2010, the Hineses filed an answer and counterclaim. In their counterclaim, the Hineses stated that the easement provided ingress and egress over the common driveway on their property to Baker's property. They noted that the deed setting forth the easement did not describe their respective obligations in maintaining and repairing the easement. They alleged that since they became owners of the property, Baker had not spent any time performing maintenance work or paid her proportionate share for maintenance or repair expenses. The Hineses sought a judgment for her proportionate costs that had been expended in the past. In addition, the Hineses sought injunctive relief and an amendment of the deed to state that Baker and her subsequent heirs or assigns of her property would be responsible for half of the costs incurred by the Hineses and their heirs and assigns in maintaining and repairing the easement. The Hineses also sought to quash the temporary restraining order.

In February 2011, the Hineses moved for summary judgment, noting that the facts were not in dispute. In addition to the information above, the Hineses included an affidavit from Mr. Hines detailing his hiring of a surveyor in 2009 to determine the boundary lines for their property, including the easement line. The surveyor placed survey pins on the property to mark the boundary line. In September, 2010, Mr. Hines relied upon the pins to mark the boundary lines—using orange paint—and to dig up the grass. Mr. Hines indicated that none of his work or the proposed placement of the fence on the boundary line would interfere with Baker's use of the driveway for ingress and egress.

In support of their motion, the Hineses argued that Baker did not have unfettered control over the easement and that she did not have the right to stop them from erecting a fence, unless to do so would interfere with her use of the driveway for ingress and egress, which they contended the building of a fence would not do. For this wrongful restraint on their use of the property, the Hineses requested dismissal of Baker's complaint, permission to continue with the construction of the fence, and an award in damages of $1,500.00. Regarding the issue of maintenance costs for the easement, the Hineses were unable to find a Kentucky case directly on point, but relied upon the majority rule that when the deed is silent, the dominant and servient estates are to jointly share the costs of repair and maintenance of a shared easement. Accordingly, the Hineses requested that the court order Baker, and her heirs, and assigns, to be responsible for 50% of the costs to repair and maintain the easement and that the deeds be reformed to put future owners on notice.

Baker responded to the Hineses' motion and filed her own motion for summary judgment. Baker stated that since 1962, she, her husband, or someone at their direction, had mowed the grass on the easement and that the family used the

---

1. This claim was apparently dropped once additional information about the property was discovered.

grass portion of the easement to travel from the front yard to the back yard as well as to access the side of the house for maintenance. She contended that the construction of a fence would interfere with her rightful use of the easement and prevent her from maintaining the side of her house. Baker asserted that she was entitled to a permanent injunction preventing the Hineses from installing a fence or otherwise interfering with or obstructing her use of the entire length of the easement. Regarding maintenance costs, Baker stated that the issue of costs had been addressed between herself and the Hineses' predecessor in title and that the Hineses should have negotiated those costs with the Whitts prior to signing the deed. In reply, the Hineses countered Baker's arguments and continued to argue that the building of a fence along the easement would not interfere with her right to use the easement for ingress and egress.

The circuit court entered an order and judgment on May 27, 2011, detailing the factual and procedural history of the case and specifically stating that the parties had agreed for the court to go to the property to observe how the properties interface. The court held that the Hineses were able to erect a fence that would still permit ingress and egress to Blackburn Avenue from Baker's residence, but ruled that the fence would have to stop far enough from the corner of Baker's house to permit a pedestrian walking over the driveway to have access to her front door and that the fence could not be placed along the side of Baker's house. The court declined to order Baker to pay for any of the maintenance costs, reasoning that the deed did not make any provision for this and that the responsibility should rest with the party upon whose land the driveway was situated. Finally, the court declined the Hineses' request that Baker forfeit the $1,500.00 bond posted for

wrongfully being restrained. The court could not state that the restraint was wrongful due to the exceptions it noted regarding where the fence could be erected.

The Hineses filed a Kentucky Rules of Civil Procedure (CR) 59.05 motion to alter, amend, or vacate the court's order, stating that the court considered evidence not before it and misinterpreted some of the evidence and case law. They disagreed with the limitations the court imposed on their construction of the fence, which they contended went beyond the purpose of the easement to provide ingress and egress from Blackburn Avenue. Furthermore, they argued that the court improperly ruled that the servient estate was entirely responsible for maintenance on the shared driveway and continued to maintain that the dominant estate should be responsible for at least half of the costs. Finally, the Hineses argued that Baker should be required to forfeit the $1,500.00 bond because the court ruled that they were permitted to construct a fence, meaning that they had been wrongfully enjoined from doing so.

Baker filed a response to the Hineses' motion as well as her own CR 59.05 motion to alter, amend, or vacate. In response to the motion, Baker stated that if a fence were to be permitted, the restrictions put in place by the court should be required. She then stated that she should not be responsible for maintenance costs because she had not resided on the property for several years. She also questioned how any decisions would be made as to maintenance and repair without resorting to litigation. For her own motion, Baker stated that she was entitled to use the full easement, not just the paved driveway, and that the deed language did not limit ingress and egress to car traffic only.

By order entered January 17, 2012, the circuit court ruled on the parties' respective CR 59.05 motions. In favor of the Hineses, the court altered the portion of the judgment mandating that the fence stop three feet short of Baker's house, but required that it had to be at least three feet away from the exterior wall of Baker's house. The court then found it inequitable to require the servient estate to bear the cost of maintaining the easement and ordered that the parties would share equally in the cost of any paving or improvements to the driveway. The court also dissolved the restraining order.

Baker moved the court to reconsider the portion of its order regarding the placement of the fence next to her house, arguing that the fence would then be constructed on the easement, rather than on its border, which would interfere with her use of the easement. Furthermore, she contended that the ruling made her property unmarketable. Following an oral argument, the court denied the motion by order entered February 16, 2012. This timely appeal follows.

On appeal, Baker continues to argue that the circuit court's ruling regarding the placement of the fence deprives her of the full use of the express easement. She requests that this Court direct the circuit court to enter a permanent injunction restraining the Hineses from interfering with her use of the entire easement and direct the Hineses to restore the grass portion of the easement. In addition, Baker continues to argue that she should not be required to share in the costs of future improvements on the easement.

█ Our standard of review in this appeal is as follows:

The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. Kentucky Rules of Civil Procedure (CR) 56.03. There is no requirement that the appellate court defer to the trial court since factual findings are not at issue. *Goldsmith v. Allied Building Components, Inc.*, Ky., 833 S.W.2d 378, 381 (1992).

*Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App.1996). "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky.App.2001). We review a trial court's ruling on a CR 59.05 motion for abuse of discretion. *Bowling v. Kentucky Dept. of Corrections*, 301 S.W.3d 478, 483 (Ky.2009), citing *Gullion v. Gullion*, 163 S.W.3d 888, 892 (Ky.2005).

The first issue we shall address is Baker's argument regarding her use of the easement. Baker contends that the trial court's ruling regarding the placement of any fence next to her house deprives her of her right to use the full length and width of the easement. The Hineses continue to argue that the easement did not give Baker, the dominant estate holder, unfettered control over the servient estate, but rather gave her only the use necessary to exercise her rights.

In the first order, the trial court permitted the Hineses to build a fence so long as the fence permitted Baker ingress and egress to Blackburn Avenue, but imposed two restrictions related to access from the shared driveway to Baker's front door and that the fence could not be placed along the boundary line next to the side of Baker's house to permit her to access that area. In the second order, the trial court amended the judgment to remove the re-

striction mandating that the fence stop three feet short of the corner of Baker's house, reasoning that this placement of the fence would not interfere with her right of ingress and egress from the street. The court also amended the judgment to rule that a fence might be constructed along the side of the house, but at a distance of at least three feet away from the exterior wall of the house. The boundary of the easement is one foot from the exterior wall of Baker's house, meaning that the court permitted the fence to be constructed two feet into the easement area.

▬ We begin our analysis with the definition of an easement. This Court addressed the subject of easements in *Dukes v. Link*, 315 S.W.3d 712, 715 (Ky.App. 2010):

> Easements are created by express written grant, implication, prescription or estoppel. An express easement is created by a written grant with the formalities of a deed. *Loid v. Kell*, 844 S.W.2d 428, 429 (Ky.App.1992). The nature of an easement is distinguishable from a mere license in that it is an incorporeal right-always separate and distinct from the right to occupy and enjoy the land itself. *Lyle v. Holman*, 238 S.W.2d 157, 159 (Ky.1951). It is a privilege or an interest in land and invests the owner with "privileges that he cannot be deprived of at the mere will or wish of the proprietor of the servient estate." *Louisville Chair & Furniture Co. v. Otter*, 219 Ky. 757, 294 S.W. 483, 485 (1927). In contrast to a restrictive covenant that restricts the use and enjoyment of property, an easement confers a right upon the dominant tenement to enjoy a right to enter the servient tenement. *See Scott v. Long Valley Farm Kentucky, Inc.*, 804 S.W.2d 15, 16 (Ky.App.1991).

Easements can be in gross or appurtenant, the distinction being that "in the first there is not, and the second there is, a dominant tenement to which it is attached." *Meade v. Ginn*, 159 S.W.3d 314, 320 (Ky.2004) (quoting 25 Am. Jur.2d *Easements and Licenses in Real Property* § 11 (1996)). An easement appurtenant inheres in the land and cannot be "terminated by an act of the parties (for example, abandonment, merger, or conveyance) or by operation of law, as in the case of forfeiture or otherwise." *Scott*, 804 S.W.2d at 16.

The Supreme Court of Kentucky set forth the rights of the owner of an easement in *Commonwealth, Dept. of Fish & Wildlife Resources v. Garner*, 896 S.W.2d 10, 13–14 (Ky.1995):

> The owners of the easement and the servient estate have correlative rights and duties which neither may unreasonably exercise to the injury of the other. *Higdon v. Kentucky Gas Transmission Corp.*, Ky., 448 S.W.2d 655 (1969). The use of an easement must be reasonable and as little burdensome to the landowner as the nature and purpose of the easement will permit. *Horky v. Kentucky Utilities Co.*, Ky., 336 S.W.2d 588 (1960). *Cf. Farmer v. Kentucky Utilities Co.*, Ky., 642 S.W.2d 579 (1982). The nature and extent of an easement must be determined in light of its purposes. *Thomas v. Holmes*, 306 Ky. 632, 208 S.W.2d 969 (1948).

The easement at issue in this case is an express easement set forth in the deeds of record. The easement was created in the deed signed August 12, 1989, and recorded in Boyd County on August 16, 1989, conveying Lot No. 49 from Baker, her deceased husband, his brother, and his brother's wife to the Whitts. The portion reserving the easement read as follows:

The parties of the first part RESERVE unto themselves, their heirs and assigns the right of ingress and egress from Blackburn Avenue over that certain driveway situated on the above described parcel which easement shall be 14 feet in width along the Westerly sideline of Lot 49 and running Northerly from Blackburn Avenue in parallel lines for a depth of 97 feet; more or less. The easement described above shall be for the joint use of the owners of Lots 48 and 49, their heirs and assigns for ingress and egress from Blackburn Avenue.

By warranty deed signed July 6, 2005, and recorded in Boyd County on July 14, 2005, Mrs. Whitt (through her son and power of attorney) transferred the property to the Hineses. The easement reservation read as follows:

There is reserved the right of ingress and egress from Blackburn Avenue over that certain driveway situation [sic] on the above described parcel which easement shall be 14 feet in width along the westerly sideline of Lot 49 and running Northerly from Blackburn Avenue in Parallel lines for a depth of 97 feet; more or less. The easement described above shall be for the joint use of the owners of Lots 48 and 49, their heirs and assignes [sic] for ingress and egress from Blackburn Avenue.

Based upon the language of the easement reservation, the purpose of the easement was to provide for ingress and egress from Blackburn Avenue for the owners of both lots, but it also provided the dimensions which meant the easement encompassed more than just the driveway.

Baker argues that any fence placed along her easement would restrict and infringe upon her use of the easement, claiming that she and/or her guests have the right to use the easement to walk from the road to the front door, or to any part of her front or back yards. She also states that an ambulance might need the easement to access the front door of the house, or that she might want to place a parking pad in her front yard and would need to use the easement to access that area. Furthermore, Baker claims that a fence would block her from having level access to her front yard. Regarding a fence being placed next to the house, she states that at any distance, one or three feet, could block light to her kitchen and prevent routine maintenance. Baker maintains that the building of a fence would interfere with her use of the easement.

In support of this argument, Baker cites to several cases, including *Hester v. Johnson*, 335 S.W.2d 574 (Ky.1960), *Wells v. Sanor*, 151 S.W.3d 819 (Ky.App.2004), as well as this Court's unpublished opinion of *Studer v. Jackson*, 2010 WL 1628213 (2009–CA–000267–MR) (Ky.App. April 23, 2010). We agree with the Hineses that these cases are factually distinguishable from the present case as they deal with passways or rights-of-way in conjunction with the owner of the servient estate blocking access to the owner of the dominant estate. That is not the case here.

However, we do agree with Baker that the Hineses, as the owners of the servient estate, were restricting Baker's use of the entirety of the easement by constructing the fence along the edge of the easement and Baker's property. The easement is meant to provide Baker with the full use and access to her property, not just along the driveway and to her garage behind the house. The Hineses' desire to put in a fence along the property line or add landscaping will impede Baker's ability to access her entire property, as she suggests in her brief. As a matter of law we disagree with the trial court and the Hineses' narrow interpretation of the easement as

encompassing only ingress and egress from Blackburn Avenue because the driveway itself was only a portion of the easement. Disallowing the construction of a fence along the border will not give Baker unfettered control over the Hineses' property, as they suggest, but will merely provide her with the ability to exercise her full rights as granted in the easement. Accordingly, we hold that the trial court erred as a matter of law in ruling that the Hineses could construct the fence, and we must reverse that decision.

Next, we shall address the trial court's ruling that the parties were to equally share in the cost of any paving or any other improvements to the shared driveway when the deed creating the easement was silent. This issue appears to be one of first impression in the Commonwealth. Baker argues this order is improper and unreasonably burdensome, and that it destroys the marketability of the house. She also notes that there is no Kentucky authority supporting the trial court's ruling. On the other hand, the Hineses contend that fundamental fairness dictates that unless the document creating the easement states otherwise, when an easement is jointly used, the parties should equally divide the reasonable costs of maintaining the easement. We agree with the Hineses.

Because this is an issue of first impression, we have sought guidance from secondary sources and other jurisdictions. James W. Ely, Jr. & Jon W. Bruce, *The Law of Easements and Licenses in Land* § 8:37 (2008), addresses the rights and duties related to repair, maintenance, and improvements in easements:

Parties to an express easement may provide for repair and maintenance, and the prudent drafter should follow this course. Absent an agreement to the contrary, the obligation to repair and maintain an easement is placed on the easement holder. In the case of sidewalk easements, statutes may alter the common-law obligation for maintenance by the easement holder.

. . . .

Several courts have stressed that the holder of an easement has a duty as well as a right to keep the servitude in repair and have compelled dominant owners to pay the cost of maintenance. Likewise, a California statute requires the holder of a right-of-way to maintain the servitude. Action by the servient owner to prevent the easement holder from making repairs constitutes an unreasonable interference with the easement holder's rights.

. . . .

The maintenance duties of multiple easement holders in a private road pose the special problem of adjusting their burdens. It has been held that, absent an agreement to the contrary, each holder is responsible only for the maintenance of that portion of the road abutting that holder's own land. In this regard, an Arizona appellate court, applying the doctrine of equitable contribution, has required dominant owners to share in the costs necessary to maintain a common driveway.

Ordinarily, the owner of a servient estate is under no obligation to repair or maintain an easement. *Many courts, however, apportion the expense of maintaining a driveway or right-of-way between dominant and servient owners when both use the easement. Apportionment is commonly based on the relative extent of usage.* Moreover, when a servient owner changes the course and water flow of a ditch easement, a court may order repairs to restore the ditch. On the other hand, a servient owner cannot seek a contribution from an ease-

ment holder for expenditures to maintain easement unless easement holder's maintenance or lack of maintenance created additional burden on servient estate. [Emphasis added, footnotes omitted.]

In *Freeman v. Sorchych*, 226 Ariz. 242, 249–50, 245 P.3d 927, 934–35 (Ariz.Ct.App. 2011), review denied (Aug. 31, 2011) (footnote omitted), the Arizona Court of Appeals addressed the doctrine of equitable contribution as it related to two dominant owners of the same easement, stating that

[C]ommon law from other states has developed addressing the responsibility of tenants using an easement regardless of their status as servient or dominant tenant. These cases set forth a general principle that a party having rights to use an easement should share in the maintenance and repair expense for that easement. *See Barnard v. Gaumer*, 146 Colo. 409, 361 P.2d 778, 781 (1961) (noting that "the burden of upkeep should be distributed between dominant and servient tenements in proportion to their relative use of the road, as nearly as such may be ascertained"); *Story v. Bly*, 217 P.3d 872, 878–79 (Colo.Ct.App.2008) (relying on § 4.13 of the Restatement (Third)); *Lakeland Prop. Owners Ass'n v. Larson*, 121 Ill.App.3d 805, 77 Ill.Dec. 68, 459 N.E.2d 1164, 1170 (1984) (recognizing that, "where a grantee has an easement which he shares with others, his duty to repair and maintain it must be apportioned with all other easement holders based upon the extent of the individuals' use of the easement"); *Larabee v. Booth*, 463 N.E.2d 487, 492 (Ind. Ct.App.1984) (concluding that, when a dominant and servient tenant both use an easement, the court may apportion the cost of repairs between them); *Bina v. Bina*, 213 Iowa 432, 239 N.W. 68, 71 (1931) (allocating specific percentage shares of responsibility among the ease-

ment users); *Drolsum v. Luzuriaga*, 93 Md.App. 1, 611 A.2d 116, 125 (1992) (remanding for the trial court to consider the use and benefit of a relocated easement in effecting an equitable distribution of the burden of relocation); *Marvin E. Nieberg Real Estate Co. v. Taylor–Morley–Simon, Inc.*, 867 S.W.2d 618, 623 (Mo.Ct.App.1993) ("[T]he general rule is that all users should contribute to maintenance in proportion to their use."); *Cohen v. Banks*, 169 Misc.2d 374, 642 N.Y.S.2d 797, 800 (N.Y.Just.Ct.1996) (holding that the dominant and servient estates, which made common and equal use of the main water line, should be equally responsible for the cost of repair); *Lindhorst v. Wright*, 616 P.2d 450, 454–55 (Okla.App.1980) ("In this case the duty and cost of maintenance should be equitably distributed among both the servient tenants and dominant tenant because their use is mutual."); *Marsh v. Pullen*, 50 Or.App. 405, 623 P.2d 1078, 1080 (1981) (remanding to apportion the costs of maintaining the easement); *Hayes v. Tompkins*, 287 S.C. 289, 337 S.E.2d 888, 891 (1985) (considering the burden, benefit, and use of the easement in apportioning maintenance and repair costs); *Hart v. Hart*, 27 Va.App. 46, 497 S.E.2d 496, 502 (1998) (apportioning the costs of maintaining and repairing easements between the parties to a divorce).

The Court went on to discuss what contribution obligations should be based upon:

Many courts recognizing the obligation of contribution have concluded that contribution should be based on each party's proportionate use of the easement. *See Barnard*, 361 P.2d at 781; *Lakeland Property Owners Ass'n*, 77 Ill.Dec. 68, 459 N.E.2d at 1170; *Bina*, 239 N.W. at 71; *Marvin E. Nieberg Real Estate Co.*, 867 S.W.2d at 623; *Co-*

*hen,* 642 N.Y.S.2d at 800; *Marsh,* 623 P.2d at 1080; *Hart,* 497 S.E.2d at 502. Other courts have indicated that contribution should be based on an "equitable" apportionment that might consider various factors, including use and benefit. *See generally Larabee,* 463 N.E.2d at 492 (citing with approval cases supporting a proportionate use analysis and cases supporting an equitable division); *Drolsum,* 611 A.2d at 125; *Lindhorst,* 616 P.2d at 454–55; *Hayes,* 337 S.E.2d at 891.

Further, a defendant should receive notice and a reasonable opportunity to participate in decisions regarding repairs and maintenance before liability attaches. *See Quinlan v. Stouffe,* 355 Ill.App.3d 830, 291 Ill.Dec. 305, 823 N.E.2d 597, 606 (2005); *Cohen,* 642 N.Y.S.2d at 800. Also, the duty to pay should be imposed only for necessary and reasonable maintenance and repairs, *see Quinlan,* 291 Ill.Dec. 305, 823 N.E.2d at 606; *Lakeland Property Owners Ass'n,* 77 Ill.Dec. 68, 459 N.E.2d at 1170, performed adequately and properly and at a reasonable price. *See Cohen,* 642 N.Y.S.2d at 800.

*Freeman,* 226 Ariz. at 250, 245 P.3d at 935 (footnote omitted).

We have also considered the authority cited by the Hineses, including *Damron v. Justice,* 162 Ky. 101, 172 S.W. 120, 121 (1915) ("The court did not err in imposing on plaintiff the duty of erecting, maintaining, closing, and fastening the gate at the public road. The deed contains no stipulation to the contrary, and, in the absence of such stipulation, those duties devolve upon the owner of the passway."). While noting the circumstances in *Damron* are different from the circumstances here, because the dominant easement holder was the only one who used the passway, the Hineses urge this Court to adopt the reasoning

that the duty of maintaining an easement should fall on the user or users of the easement.

We have also considered the Hineses citations to foreign authority. In *Beneduci v. Valadares,* 73 Conn.App. 795, 808, 812 A.2d 41, 51 (Conn.App.Ct.2002), the Connecticut Court of Appeals addressed a similar situation involving a common driveway:

> We conclude that the proper rule is, absent language in a deed to the contrary, "[j]oint use by the servient owner and the servitude beneficiary ... of the servient estate for the purpose authorized by the easement ... gives rise to an obligation to contribute jointly to the costs reasonably incurred for repair and maintenance of the portion of the servient estate ... used in common." 1 Restatement (Third), Property, *Servitudes* § 4.13(3), pp. 631–32 (2000).

The Court of Appeals of Virginia made the same holding in *Hart v. Hart,* 27 Va.App. 46, 59–60, 497 S.E.2d 496, 502 (Va.Ct.App. 1998), in relation to an easement created as the result of a partition in a divorce action.

■ We are persuaded by the authority cited by the Hineses and hold that, in the absence of an agreement to the contrary as set forth in the document creating an easement, where an easement is jointly used by the dominant and servient estates, the cost to maintain the easement should be equitably divided between the two estates. We recognize Baker's concerns that this ruling "is tantamount to giving the Hines [sic] a blank check[.]" However, as the Hineses point out in their brief, this rule of law is subject to a reasonableness standard, meaning that the cost of any repairs or maintenance to the driveway must be reasonable. *See Freeman v. Sorchych, supra.* Here, the Hineses have not been given a "blank check" from Baker's

account to make whatever changes, repairs, or upgrades to the joint driveway that they desire. Rather, the Hineses must proceed under a reasonableness standard.

In reviewing the trial court's order, we note that it used the word "equally" rather that "equitably" in describing how the costs would be shared between the parties and did not impose a reasonableness requirement. Therefore, while we find no error in the trial court's holding that the parties were to share the costs of any paving or other improvements to the shared driveway, we must remand this matter and direct the trial court to clarify its ruling to state that the cost of reasonable maintenance of, and improvements to, the shared driveway must be equitably shared.

Accordingly, for the reasons set forth above, the orders of the Boyd Circuit Court are reversed, and this matter is remanded for further proceedings in accordance with this opinion.

ALL CONCUR.