THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* NELLIE WITTMAN et al., Defendants.

Court of Special Sessions held by a City Magistrate of the City of New York, Borough of Queens, July 2, 1954.

*Adrian P. Burke, Corporation Counsel (James Hurley* of counsel), for plaintiff.

*Nellie Wittman,* defendant in person.

*William E. Kennedy* for Max Shapiro and others, defendants.

J. IRWIN SHAPIRO, M. This case came on for trial before me sitting as a Court of Special Sessions and at the end of the whole case the court reserved decision on the question of law involved.

The eighteen defendants herein are each charged, in separate informations, with a violation of the provisions of sections 643a–9.0 and C26–207.0 of the Administrative Code of the City of New York, in that each knowingly failed and refused to comply with a lawful order of the borough superintendent of Queens which directed each of them to repair and replace a retaining wall which, he alleges, is in a defective and dangerous condition. Pursuant to stipulation, the court made a personal inspection of the site of the alleged violation and is therefore fully familiar with the physical situation which exists there. After such inspection of the retaining wall and by reason of the uncontradicted testimony in the case, the court finds as a fact that the same is in a cracked, defective and dangerous condition.

Originally the property of these eighteen defendants was undeveloped and title was held in the name of *one* owner.

He improved this property by erecting thereon eighteen separate attached dwellings, each located on a separate lot. A garage was erected in the rear of each such dwelling.

To accomplish his building plan, he had to excavate the land in the rear of each of these eighteen lots so that a common driveway and rear yard, both at level grade, one to the other, could be created. In doing so a physical condition resulted whereby in the end lot (now the property of the defendant Wittman) the rear yard was about five feet below the ground of the adjoining lot to the east. The lot immediately to the east was graded in accordance with the legal requirements of

■■■■■■

the City of New York. Each of the eighteen lots now owned respectively by the eighteen defendants before the court was graded in the rear in gradually varying degrees below the grade of Hoover Avenue, the street upon which they all front, beginning with the first lot at 150th Street, which was slightly below legal grade, and extending to the Wittman lot which was approximately five feet below legal grade.

When this eighteen-house development was undertaken by the original owner of the land, he recognized the legal necessity for the erection of a retaining wall at the end of the common driveway and therefore provided such a wall. It was and is for all intents and purposes an integral part of the common driveway of all eighteen owners, for without the wall the plan for the common driveway could not have been fulfilled. It would thus seem that the retaining wall serves a purpose common to and which inures to the benefit of each of these properties and their owners.

However, counsel, representing all of the defendants other than the defendant Wittman, argues that his clients purchased each of their properties without any obligation on their part to repair or replace the retaining wall which concededly is not located on their property.

In analyzing this contention, however, sight must not be lost of the situation as it existed when each of these lots was sold by the original owner. As has been noted, the property was one plot before it was subdivided into eighteen separate improved lots. When each individual owner purchased his respective parcel in this common plan and scheme of development, he could observe, *and is legally chargeable with having observed*, the open and notorious physical condition which then existed. The yards, garages and driveway were maintained *in common* below the legal grade of Hoover Avenue. Each owner acquired an easement to use the driveway to and from his respective garage, and his enjoyment of his easement was at all times dependent upon the maintenance of the retaining wall at the end of the plot. Without the maintenance of the retaining wall the use of the common driveway which each of these owners enjoys could not be legally effectuated.

Assuming, *arguendo,* that the wall in question is wholly upon the property of the defendant Wittman, and that by reason thereof the obligation to repair it falls upon her alone, it might well be that the cost of repairing this defective and dangerous retaining wall would be so prohibitive as to induce her to

legally abandon the easement and use of her garage, fill in the rear of the property to the grade of Hoover Avenue and thus unilaterally create a situation whereby her neighbor immediately to the west would incur the entire obligation to provide a retaining wall since such neighbor would then be maintaining the grade of his lot below the legal grade. Each neighbor could then in turn follow Wittman's example and pass the obligation along to the neighbor immediately to the west of him up to the owner of the end lot at 150th Street.

It is believed that the example thus cited demonstrates that there is a mutual obligation upon adjoining co-owners in a situation of this kind.

Section C26–562.0 of the Administrative Code of the City of New York determines the legal grade of property within the city. So far as here material it provides: "*Regulation of lots.* — The regulation of lots, in conformity with the street on which they are situated, shall be calculated at curb level."

This necessarily means that the grade of a lot must be determined by the grade at curb level, but there is nothing in the law which compels an owner to erect his property level with the grade of the curb. However, if by the erection of a building, a difference in elevation between adjoining properties is created, the statute steps in and imposes an obligation upon the builder to erect a retaining wall to compensate for ignoring the grade level. That statutory provision is contained in subdivision c of section C26–563.0 of the Administrative Code of the City of New York which reads as follows: " Surplus retaining wall.— Where any owner shall insist on maintaining his ground either higher or lower than the legal regulation as provided in section C26–562.0, the surplus retaining wall, which may be necessary to support such height or provide for such excavation, shall be made and maintained at the sole expense of such owner, and such additional thickness as may be required shall be built on the land of such owner."

In this case each of the defendants, but for the retaining wall, would be maintaining his property not at grade in violation of the section afore-mentioned.

Under the circumstances it would seem that the obligation to maintain the retaining wall is the mutual obligation of all those who would be occupying their property in violation of law if there were no retaining wall. If the court's conclusion is correct, *all* of the defendants would be in violation of section 643a–9.0 of the Administrative Code which makes a violation

of the section above-mentioned a misdemeanor if there were no retaining wall at all, or, as in this case, if the existing retaining wall is improperly maintained.

The conclusion reached by the court in this case is similar in all respects to the result reached in *People* v. *Small,* Court of Special Sessions, Borough of Queens (Feb. 14, 1946). In that case, in which the facts were substantially similar to those now before the court, the Court of Special Sessions in determining that there was a mutuality of obligation upon the part of all of the property owners and that the obligation was not alone that of the owner upon whose property the retaining wall stood said: '' The obligation to maintain and repair the wall devolved in the first instance, upon the company owner which built it. (Adm. Code, § C26–563.0.) When the ten owners purchased their respective parcels they were aware of the peculiar physical conditions of the development, that the garages, courtyards and driveway were below grade and that there were easement rights over the driveway; furthermore, that the scheme of construction adopted in this development was dependent upon the maintenance of the surplus retaining wall. It must be assumed they knew that when the company divested itself of title, its statutory obligation to maintain and repair the wall ceased. Under the particular circumstances appearing herein, it must be held that this obligation now devolves upon all ten owners jointly.''

The case of *Bauer* v. *Lovelace* (272 App. Div. 820, 821) is urged upon the court as an authority for dismissing the complaint as against all of the defendants, other than the defendant Wittman. In that case the Appellate Division, Second Department, in a memorandum opinion, said: '' The instrument creating the right of way or easement is silent as to any obligation on the part of plaintiffs, as the owners of a servient estate, to maintain the driveway or the wall adjacent thereto in proper condition; hence the plaintiffs may not be required, as a contract engagement, to contribute to the expense of repairing the wall at the rear of defendants' lot. No obligation to do so can be predicated upon sections C26–563.0 or C26–564.0 of the Administrative Code of the City of New York. *Those sections only obligate the plaintiffs to repair the retaining wall or portion thereof abutting their property at the rear of their lot.* If defendants' interpretation of such statutory provisions were adopted, it may well be that the statutes would be invalid as to plaintiffs as purporting to require them to maintain a wall at

the rear of defendants' lot for the protection or advantage of property which they do not own on either side of the wall at that point." (Italics supplied.)

The language of the Appellate Division in the memorandum above set forth would appear to be contrary to the ruling here made. But, the opinion must be related and limited to the facts in the case and the setting in which it was written. (*Dougherty* v. *Equitable Life Assur. Soc. of the U. S.*, 266 N. Y. 71, 88.)

The record on appeal in the *Bauer* case (*supra*), as well as the italicized portion of the opinion, shows that the retaining wall was erected along the *rear* lot line of approximately twenty-two property owners, each of whose properties adjoined his neighbors in chainlike fashion. The garages were located in the rear of each dwelling and ingress to and egress from these garages was had by way of the common driveway which ran along the rear portions of the respective properties and terminated in a driveway at each end of the development which in turn led to or from the street. *These driveways made up one continuous common driveway over which each of these property owners had an easement and retaining wall was erected behind each driveway to support the higher ground of these properties all of which fronted on a parallel street.* A portion of the retaining wall directly in the rear of the defendants' property was in need of repair. The remaining portion of the retaining wall was not in need of repair. The holding in the *Bauer* case when considered in the light of the facts in the record must be taken to mean that the property owner where the wall was in need of repair was solely obliged to repair the same and that there was no corresponding obligation on the adjoining or abutting property owners. This would seem to be a sound and fair conclusion. Since the retaining wall ran along the property of all of the people in the development their responsibility was a proportionate one, i.e., they were each responsible for maintaining their own portion of the retaining wall. In other words, the court, in effect, held that if the entire wall had to be replaced then all of the owners of the property in that development would have a common and mutual obligation to replace the same, but, that so long as only one section of the retaining wall had to be replaced then the obligation fell wholly upon the owner of the property where that one section of the retaining wall was located.

Though we have sought to distinguish the *Bauer* case it must be apparent that the question of law to be here resolved is

certainly not free from doubt. Other doubts, too, assail the mind of the court. The charge here is a misdemeanor, a crime, and a situation could fairly be imagined where seventeen adjoining owners might be willing to go along with the cost of repairs to a retaining wall and the eighteenth be obdurate and adamant. Could the one lone holdout by his attitude make the seventeen other property owners misdemeanants? True, it might be held that in such a situation the seventeen could get together and pay the entire cost and thus rid themselves of criminal responsibility, holding the remaining property owner liable in a civil proceeding. But, suppose the situation were one in which one only of the owners was willing to contribute his proportionate share of the cost and the other seventeen were unwilling to do so, would it then be reasonable to hold that because the one would not or could not shoulder the financial obligation for the entire property and then sue the holdouts that he, perforce the statute, was guilty of a misdemeanor. Neither side has posed these questions, but they have occurred to the court in its consideration of the question of law here involved and we cite them merely to illustrate that the question of law here to be determined can fairly be argued either way.

Under such circumstances we are told by the Court of Appeals (*People* v. *Reed,* 276 N. Y. 5, 9) that " While the defendant under our criminal procedure is entitled to the benefit of every reasonable doubt on the facts, the People should be entitled to any reasonable doubt a trial judge may have upon the law for, if he makes a mistake on the law, the People have no opportunity or method of reviewing his ruling, as strange as it may seem to us in this enlightened day. The defendant, for a wrong ruling, may always appeal the case for review to a higher court; the People* have no such privilege * * *. The trial justices in criminal cases, therefore, should bear this in mind when ruling upon points of law."

However one may feel ethically about such a rule, it is the law and it is a fact that in this case a determination for the defendants would leave the People powerless to review the findings of this court.

---

* The Legislature, apparently in obeisance to the statement of the court in the *Reed* case, and upon recommendation of the Judicial Council, has somewhat relaxed the rule of nonappealability by the People by permitting an appeal to be taken from a *pleading* dismissal of an *indictment* even *after* a trial has begun but nothing has been done to include a pleading dismissal of an *information* nor to permit an appeal by the People from a dismissal by a trial court for alleged insufficiency of the evidence (Code Crim. Pro., § 51, subd. 3).

Under the circumstances, and for the reasons herein above set forth, each of the defendants is found guilty and is directed to appear before this court for sentence on the 12th day of July, 1954.