OPINION OF THE COURT
Daniel Markewich, J.
This is the second small claims action between these parties, who are next door neighbors, concerning easements contained in their respective deeds. The previous lawsuit involved the parties’ septic tank easement, and resulted in a default judgment for $101.88 in favor of plaintiff for one half of the cost of repairs. This court’s opinion, primarily concerning issues of service requirements for notices of small claims, is reported as Cohen v Banks (160 Misc 2d 159 [Just Ct, Rockland County 1994]).
The current action arises out of the easement for the water pipes. In brief, plaintiff asserts that defendant must pay $1,759.75 for one half of the cost of repairs made to the main waterline running under his property and used by both parties. Defendant, in turn, asserts that plaintiff must pay the $1,200 bill for the delay caused to her workmen when plaintiff, with the cooperation of village and county officials, would not allow defendant’s contractor to excavate the parties’ commonly held center lawn in order to install a new main waterline bypassing plaintiffs own property after he had refused to afford defendant access to his land to make necessary repairs to her branch waterline that ran from the existing common main line. Defendant also asserts that plaintiff must pay the $4,200 cost of the new main waterline that she was eventually permitted to lay from her house through the center lawn to the street. Each of the parties denies the other’s claims. Pursuant to UJCA 1801 and 1805 (c), defendant’s counterclaims are limited to a total of $3,000.
There is no reported New York decision dealing with the precise legal issues found in this case. In Cantelmo v Knaust (184 AD2d 830 [3d Dept 1992]), the Appellate Division ruled on similar facts; but the easement in that matter contained specific apportionment provisions regarding repairs. The Court in Cantelmo held that the language of the easement required the parties to divide equally the cost of repairing their jointly used main waterline running under the plaintiffs’ property. The Court likewise required each of the parties to maintain and repair at their own expense the respective branch lines *376 also running under the plaintiffs’ property, and allowed the defendants to enter for that purpose upon a finding that they had not abandoned the easement.
The easements found in the instant deeds contain no language mandating a similar division of costs. Although the driveway easement requires the parties to share equally all costs of repair and maintenance, the septic tank and waterline easements are altogether silent as to apportionment. Defendant argues from the silence that inasmuch as the parties specified sharing when that was intended with respect to the driveway, they must therefore have intended no sharing with respect to the septic tank and waterlines. The parties’ intent is, however, not so clear.
It seems likely that the driveway easement specified equal sharing of expenses in order to avoid the unjust apportionment that might otherwise have resulted, despite common and equal use, from the fact that the greater portion of the driveway was situated on the plaintiff’s property. In such circumstances, the absence of similar sharing language for the septic tank and waterline easements means only that the parties intended traditional easement rules to govern.
Ordinarily, the owner of a servient estate such as plaintiff would have no duty to maintain or repair the easement of a dominant estate such as defendant’s in the absence of language in the grant creating such an obligation; his only duty would be the passive one of permitting the defendant to enter to make her own repairs. (Elzer v Nassau County, 111 AD2d 212 [2d Dept 1985].) The rule is different, however, for easements "owned in common and used by the co-owners”. (Janes v Politis, 79 Misc 2d 941, 943 [Sup Ct, Rockland County 1974].) The Rockland court held, notwithstanding that the language of the conveyances created dominant and servient tenements, that the joint use by both parties of the septic tank on the servient tenant’s property as their sewage disposal facility gave the easement "many of the attributes of * * * sharing an easement in common”. (Supra, at 943.) Upon consideration of all the circumstances, including the public health violations that would result from overflow, the court directed the parties to divide the cost of maintenance and repair of the septic tank.
In the instant case, as in Janes v Politis and Cantelmo v Knaust (supra), the main waterline, which was equally used by both estates, should be treated for apportionment of repair costs as the equivalent of an easement in common; but, as in Elzer v Nassau County (supra) and Cantelmo v Knaust, *377 defendant’s branch waterline used solely by her should be treated as her dominant estate running through plaintiff’s servient estate.
The general rule is that, absent an express agreement, all persons benefited by an easement must share ratably in the cost of its maintenance and repair. (Allen v Greenberg, 21 Misc 2d 763 [Sup Ct, Queens County 1959]; People v Wittman, 205 Misc 1046 [Special Sessions 1954].) Thus, where each party retained title to one half the width of their common passageway, they were held jointly liable for its maintenance. (Brearton v Fina, 3 Misc 2d 1 [Franklin County Ct 1956].) As 1 Friedman, Contracts and Conveyances of Real Property § 4.9 (m) (5th ed 1991) explains, "[t]he dominant owner * * * has the duty to repair where he is the user”, in which event the servient owner’s "only obligation [is] to refrain from interfering with * * * proper use” of the easement; but the overriding principle is that "[t]he duty to repair * * * is on the user, being on the servient tenant when he is the user, and on both where the use is shared”.
Several out-of-State cases cited by Friedman have considered this issue and reached the same result. McDonald v Bemboom (694 SW2d 782, 786 [Mo App 1985]) held that it was "fair and just” to apportion "the cost of repairs and maintenance * * * between the owners of the dominant and servient tenements”, even though the agreement creating the easement was silent, where the owners of both tenements made regular use of the easement. (Accord, Drolsum v Luzuriaga, 93 Md App 1, 611 A2d 116 [1992]; Marsh v Pullen, 50 Ore App 405, 623 P2d 1078 [1981]; Hayes v Tompkins, 287 SC 289, 337 SE2d 888 [1985]; Lindhorst v Wright, 616 P2d 450 [Okla App 1980]; Larabee v Booth, 463 NE2d 487 [Ind 1984]; McCann v Dunteman Co., 242 111 App 3d 246, 609 NE2d 1076 [1993]; Bina v Bina, 213 Iowa 432, 239 NW 68 [1931]; Barnard v Gaumer, 146 Colo 409, 361 P2d 778 [1961]; see also, Annotation, Right of Servient Owner to Maintain, Improve, or Repair Easement of Way at Expense of Dominant Owner, 20 ALR3d 1026.)
This court adopts as the rule of law generally applicable to the instant facts that the dominant and servient estates, which made common and equal use of the main waterline, should be equally responsible for sharing in the cost of its repair. This rule, however, is subject to three qualifications discussed in Janes v Politis (79 Misc 2d, supra, at 944-945). First, the plaintiff must have given the defendant adequate notification of the water leak and a reasonable opportunity in the circum *378 stances to participate in decisions regarding the repairs. Secondly, the plaintiff must have used reasonable care to see to it that the repairs were performed adequately and properly. Thirdly, the plaintiff must have taken care to ensure that the repairs were performed at a reasonable price.
In the instant case, communication between these neighbors is difficult because they choose not to speak to each other and the plaintiff seeks to goad the defendant while the defendant tries to avoid the plaintiff. The court is convinced that, in light of these difficulties, the plaintiff’s notification to the defendant of the leak through water department personnel and thereafter by hand-delivered letter was adequate and that she failed to offer a prompt response, just as the court takes judicial notice she had repeatedly failed to respond to notifications during the previous controversy between the parties. (See, Cohen v Banks, 160 Misc 2d, supra, at 161-162, 167.)
Fortunately, it is not necessary for idle court, in the face of the conflicting and inconclusive testimony with respect to repairs, to determine the propriety and reasonableness of plaintiff’s conduct in spending thousands of dollars to repair rather than completely replace 80-year-old steel pipes. After plaintiff’s contractors apparently inadvertently and perhaps inevitably caused damage to both plaintiff’s and defendant’s equally old branch lines while repairing the main line, plaintiff had his own branch line promptly repaired. When, however, because of defendant’s concerns for the appropriateness of the work and the price, she declined immediately to pay plaintiff for one half of the cost of the repairs he had made to the common main line, plaintiff refused to permit defendant to exercise her right as the owner of the dominant tenement to enter upon his property to make repairs to her own branch line.
Plaintiff thus violated his duty as the owner of the servient estate. The defendant had the unassailable right as owner of the dominant estate to enter upon plaintiff’s real property to make repairs, and plaintiff had no right "to take the law in his own hands” by exercising self-help to stop her. His remedy, if any, lay in resort to the courts, such as by "[a]n action * * * for * * * trespass * * * or perhaps in equity, to enforce a forfeiture of the right”. (McMillan v Cronin, 75 NY 474, 476-477 [1878]; Cantelmo v Knaust, 184 AD2d, supra, at 831.) More likely, the plaintiff would be relegated solely to an action for damages. (Koshian v Kirchner, 139 AD2d 942, 943 [4th Dept 1988], citing 49 NY Jur 2d, Easements, § 178.) Even if the defendant had in fact abused her easement right by failing to *379 contribute to the repair of the common waterline, which she apparently thought could and should have been fully replaced at lower cost by new copper pipes, the plaintiff could not act on his own so as to bar the defendant from entering to make repairs to her branch line. (836 Franklin Ave. Catering Corp. v Haber, 164 Misc 227 [Sup Ct, Kings County], affd 251 App Div 728 [2d Dept 1937].)
Inasmuch as the plaintiff wrongfully and spitefully deprived the defendant of the opportunity to make the repairs to her own branch line that were necessary to enable her to use the water flowing through the common easement that had already been repaired, the defendant is excused from contributing to the cost of plaintiff’s repairs to the common line that plaintiff rendered useless to defendant; hence, plaintiff must bear these costs himself. Accordingly, plaintiff’s claim is dismissed and judgment is granted to defendant.
The defendant’s counterclaims must fare no better. First, she cannot hold the plaintiff legally responsible in damages for the delay caused to her contractors in excavating the parties’ commonly held center lawn for a new main waterline directly from the street to her house after plaintiff refused to let her enter his property to repair her branch line. Albeit plaintiff undertook to block defendant’s work for both economic reasons and motives of control and spite, the Village of South Nyack and Rockland County enforced the temporary stoppage upon their view that the applicable law required a licensed plumber to be present during defendant’s excavation of the center lawn. Regardless of plaintiff’s motivations, it does not appear either that he gave the authorities any "false information” or that the county or village officials lacked reasonable grounds for "acting upon the information given them” by plaintiff. (Rosario v Amalgamated Ladies’ Garment Cutters’ Union, 605 F2d 1228, 1248 [2d Cir 1979], cert denied 446 US 919 [1980].) Indeed, plaintiff permitted the work to proceed once a licensed plumber was present, because he felt he had run out of options to enforce payment by defendant.
Secondly, the defendant cannot bind the plaintiff to responsibility for her costs in choosing, out of exasperation, to construct a wholly new water delivery system bypassing plaintiff s property when, probably at lesser expense and exertion, she might have procured a mandatory injunction that would have permitted her to continue to obtain her water by use of the easement. (Cf., Gorman v University of Rhode Is., 646 F Supp 799, 814-815, n 11 [D RI 1986].) "An injunction is the usual remedy *380 invoked by the owner of a legal easement to remove an obstacle to its possession and enjoyment.” (Saratoga State Waters Corp. v Pratt, 227 NY 429, 447 [1920].)
If, for example, the defendant had needed to purchase bottled water while she was unable to make use of her branch waterline, the expense thereof would have been recoupable as damages "for mitigation costs associated with * * * reasonable attempts to minimize [her] injuries” stemming from the plaintiff s conduct. (Leicht v Town of Newburgh Water Dist., 213 AD2d 604, 605 [2d Dept 1995].) The same cannot be said, however, for defendant’s deliberate decision to increase her damages at plaintiff’s expense by installing a new main waterline away from plaintiff’s own property rather than seeking an injunction. In the only reported case raising somewhat similar issues, Wolski v De Luca (112 AD2d 220 [2d Dept 1985]), the dominant tenant obtained a permanent injunction that, in part, permitted him to retain concrete ramps that he had erected to protect his access to the right of way the servient tenant had blocked; but it does not appear that any consideration was given to an award of damages for the construction costs.
In this court’s judgment, there were present in the instant case the "special circumstances” left open by the holding in Lipshie v Lazarus (235 NYS2d 764, 769 [Sup Ct, NY County 1962]), requiring the defendant to take reasonable legal action to protect her rights rather than charging plaintiff for the cost of the new waterline that defendant installed in a new location. Accordingly, the defendant’s second counterclaim must be dismissed for her failure to have mitigated her damages and, indeed, her determination to maximize them rather than seeking legal relief. (Manufacturers & Traders Trust Co. v Holley, 108 Misc 2d 685 [Buffalo City Ct 1981].)
Moreover, inasmuch as the plaintiff would not have had to. pay for the fees and expenses that the defendant would have incurred in obtaining an injunction, the court finds no justification for requiring him to pay for the cost of the alternative of self-help that she chose to pursue in lieu of court action. While it is understandable that the defendant desired to free herself from the plaintiff’s control and interference, he is not required to pay for her exercise of that option.
The primary duty of a court sitting in small claims is "to do substantial justice between the parties”. (UJCA 1804, 1807.) Here, undoubtedly because of the complete breakdown of neighborly relations and communications, each of the parties *381 has behaved without due recognition of the other’s rights; neither party should be permitted to benefit from such unseemly conduct. In the words of Hesiod, Works and Days: "A bad neighbor is a misfortune, as much as a good one is a great blessing.” Pursuant to the applicable rules of substantive law, this court will leave the parties where they have placed themselves; accordingly, both the plaintiff’s claim and the defendant’s counterclaims are dismissed.