245 P.3d 927

**Gerald C. FREEMAN and Janice B. Freeman, husband and wife, Plaintiffs/Appellants,**

v.

**Donald R. SORCHYCH, a single man, Defendant/Appellee.**

**No. 1 CA-CV 09–0720.**

Court of Appeals of Arizona, Division 1, Department D.

Jan. 13, 2011.

---

8. We are not dealing here with a defendant who has initiated a civil action for the purpose of evading the victim's rights.

Mahaffy Law Firm, P.C. By Steven C. Mahaffy, Chandler, Attorneys for Plaintiffs/Appellants.

Carol Lynn de Szendeffy, Carefree, Attorney for Defendant/Appellee.

## OPINION

WINTHROP, Presiding Judge.

¶ 1 This case raises a question not previously addressed in Arizona: When multiple dominant estate holders use an easement, must they share in the costs necessary to maintain and repair that common easement, even in the absence of a cost-sharing agreement or a provision imposing such an obligation within the document conveying the easement? Gerald C. and Janice B. Freeman brought an action for contribution and unjust enrichment against Donald R. Sorchych in an effort to recoup a portion of expenses the Freemans incurred related to a roadway easement they and Sorchych use as the sole means of access to their respective properties. Recognizing that no case in Arizona has previously required contribution in such a situation, the trial court found in favor of Sorchych on the Freemans' claim for contribution, and further determined that the Freemans had failed to prove their claim for unjust enrichment. The Freemans appeal the trial court's judgment in favor of Sorchych. For the following reasons, we hold that the Freemans may seek equitable contribution from Sorchych for expenditures made for necessary roadway maintenance and repairs. However, we affirm other determinations made by the trial court, includ-

ing its decision regarding the Freemans' claim for unjust enrichment. Accordingly, we affirm the judgment in part, vacate in part, and remand for supplemental proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The Freemans and Sorchych are neighboring landowners who each own multiple acres of property in rural Cave Creek, Arizona. The Freemans' homestead consists of approximately thirty acres of property, and Sorchych owns approximately ten acres of property, including his home. The sole method of access to both the Freemans' and Sorchych's properties is an appurtenant roadway easement that, due to erosion from rain and other environmental factors, requires periodic maintenance and grading. The Freemans and Sorchych are apparently the only regular users of the easement, which was created in October 1969 to benefit a predecessor in interest.[1] In 1991, Jerry Foster, a property owner subsequent to the predecessor in interest, sold much of his land to the Freemans, who built their home there during approximately 2003–2005.[2] Foster sold his remaining property and home to Sorchych in December 2000.[3]

¶ 3 On October 18, 2004, the Freemans filed a complaint in Scottsdale Justice Court, alleging that they had hired T.L. Hanks Excavating, Inc. to perform maintenance on the roadway easement, but that on approximately May 20, 2004, Sorchych had tortiously interfered with that maintenance work, caus-

1. Much of the roadway easement exists on land owned by neither the Freemans nor Sorchych, although a portion of the roadway utilized by both the Freemans and Sorchych exists on Sorchych's property. The Freemans state, however, that neither they nor Sorchych own any of the underlying property upon which the portion of the easement that is the subject of the dispute is located.

2. Foster purchased the property in approximately 1980, and subsequently maintained the road himself, with assistance from a neighbor. After he sold a portion of his property to the Freemans, Foster requested that they participate in the costs of maintenance and repairs, but Mr. Freeman allegedly refused the request. Mr. Freeman has at least in part disputed that allega-

tion, averring that he did contribute to the common portion of the road's maintenance in 1992.

3. Sorchych has contended that, soon after purchasing his portion of the Foster property, he had the roadway graded, and he rather than the Freemans bore the responsibility for maintaining and repairing the roadway—at least until the Freemans decided to build their home, move onto their property, and dramatically improve the road, ostensibly for the purposes of acquiring a building permit and providing access for construction and fire department equipment. Sorchych further contended that, sometime during the three years before trial, his wife and a contractor, Bill Payne, had performed maintenance and repairs on the shared portion of the road.

ing the Freemans to incur additional costs of $2,162.18.

¶ 4 In August 2005, the Freemans filed a First Amended Complaint, further alleging they were entitled to a one-half contribution for roadway maintenance and repair from Sorchych as the only other contiguous landowner who regularly used the roadway easement. The Freemans alleged they had expended approximately $3,685.00 in 2003, $14,633.74 in 2004, and $14,410.20 in 2005 as necessary maintenance costs on the roadway easement. They further alleged that, at their request, Sorchych had initially agreed to contribute payment for necessary roadway maintenance and repair, but had later refused to do so. The amended complaint sought damages on the theories of contribution, unjust enrichment, and tortious interference, seeking fifty percent of the allegedly necessary roadway maintenance costs,[4] $2,162.18 for the additional costs incurred as a result of Sorchych's alleged tortious interference, and costs and attorneys fees pursuant to Arizona Revised Statutes ("A.R.S.") section 12–349 (2003). As a result of the amended complaint, the case was transferred to superior court.

4. By the time of trial, the amount sought by the Freemans from Sorchych for road maintenance and repair was $21,657.16.

5. The case proceeded to arbitration, and in March 2006, the arbitrator found in favor of Sorchych with regard to all three counts and awarded Sorchych his court costs, but declined to award attorneys' fees pursuant to A.R.S. § 12–349. On March 29, 2006, the Freemans appealed to the trial court from the arbitrator's decision.

6. Sorchych paid the amount owed on the judgment related to the tortious interference with contract claim, and that judgment is not a subject of this appeal.

7. The interpretation of an easement is generally a matter of law. See Powell v. Washburn, 211 Ariz. 553, 555, ¶ 8, 125 P.3d 373, 375 (2006); Squaw Peak Cmty. Covenant Church of Phoenix v. Anozira Dev., Inc., 149 Ariz. 409, 412, 719 P.2d 295, 298 (App.1986). As noted, the document conveying the easement grants "an easement for existing roadway as it exists on October 2, 1969." The easement does not clarify whether its language should simply be interpreted as referring to the existing pathway or configuration (i.e., location) of the road in 1969 or as perhaps also referring to the condition or quality of the road

¶ 5 In his answer, Sorchych asserted that the Freemans' expenditures were unreasonable and that he had not approved or agreed to contribute payment for the roadway's maintenance and repair, but that he had offered the reasonable use of his tractor for such maintenance and repair. He also sought costs and attorneys' fees pursuant to A.R.S. § 12–349.[5]

¶ 6 The Freemans filed a motion for summary judgment as to all counts against Sorchych, who filed a response and cross–motion for summary judgment. The trial court denied the parties' motions for summary judgment, with the exception that it granted partial summary judgment in favor of the Freemans with regard to their tortious interference with contract claim.[6]

¶ 7 On March 24 and 25, 2009, the trial court held a bench trial de novo on the remaining claims. At trial, the parties agreed that the easement in dispute was one that granted "an easement for existing roadway as it exists on October 2, 1969"; thus, a potentially critical factual question for the court was the condition of the roadway in 1969.[7] The Freemans argued that all of the

in 1969. Further, the easement provides no express description of the condition or quality of the road, and it also contains no express language specifically imposing an obligation to repair or maintain the roadway in the condition that it was in as of October 2, 1969. The Freemans nonetheless contend that the easement's aforementioned language impliedly imposes such an obligation upon the successors in interest to the easement. Our supreme court has recently adopted the approach of the Restatement (Third) of Property: Servitudes ("Restatement (Third)"), which provides that "[a] servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created." See Powell, 211 Ariz. at 554, 556–57, ¶¶ 1, 13–14, 125 P.3d at 374, 376–77 (quoting Restatement (Third) § 4.1(1) (2000)). Thus, to the extent possible parties should present evidence regarding, and a trial court should attempt to ascertain, the original intent of the parties to an easement.

We also note that although the Freemans contend "the evidence is undisputed that the condition of the roadway in 1969 was better than it is today" because they presented a witness who testified as to the road's condition in 1969, such testimony must be evaluated in light of any other

expenditures made were to maintain the road in the same condition as it existed in 1969, and they further posited that the easement carried with it an unexpressed but concomitant obligation of contribution, at least with regard to maintenance of the real property owned by third parties. Sorchych maintained that no right of contribution existed because the easement did not expressly require contribution, no statute mandated contribution, and no Arizona case law had addressed whether joint users of an easement have to share maintenance, much less required them to do so. Sorchych further disputed the need for the expenditures, maintaining that the Freemans were seeking his contribution to improve rather than simply maintain the roadway, and he also disputed the amounts expended.

¶ 8 At the end of the first day of trial, the court concluded that, although the Freemans had presented an equitable argument regarding their claim for contribution, they had demonstrated no legal right to seek con-

tribution from Sorchych, "an unrelated party who owes no contractual or other obligation to [the Freemans], to make substantial contributions for expenditures made for a road situated on real estate owned by a third party based upon the grant of a 1969 easement that grants the parties' predecessor in interest an access right without any corresponding maintenance obligation."[8] At the conclusion of the Freemans' case, the court further determined that the Freemans could not recover under an unjust enrichment theory because, although they had expended funds that benefitted both themselves and Sorchych, they had not established that they expended any funds solely for Sorchych's benefit, i.e., to their detriment.

¶ 9 In September 2009, the trial court issued a signed judgment, dismissing the Freemans' claim for contribution and granting Sorchych's motion for judgment dismissing the Freemans' claim for unjust enrichment. The court also awarded costs in the amount of $191.00 and, upon reconsideration, attor-

evidence tending to indicate the road's previous condition. *See generally Premier Fin. Servs. v. Citibank (Ariz.)*, 185 Ariz. 80, 85, 912 P.2d 1309, 1314 (App.1995) (stating that the role of weighing the evidence and determining the credibility of witnesses is the role of the trial court). Given that Sorchych presented probative evidence that could be interpreted as controverting the testimony presented by the Freemans and creating a question of fact as to the roadway's previous condition, and given that the trial court ruled at the conclusion of the Freemans' casein-chief and therefore at least some of Sorchych's evidence was apparently not presented or considered by the trial court, to the extent it is relevant a factual question still exists as to the previous condition of the road in 1969 and subsequently.

8. The court further noted that the Freemans' request for contribution "is made even though [the Freemans] acknowledge that [Sorchych] never agreed to contribute despite the fact this issue was discussed by the parties." The Freemans argue that the testimony at trial was that Sorchych did in fact agree to contribute, and therefore, the court erred in its finding. We find no clear error in the trial court's characterization of the Freemans' testimony. *See Farmers Ins. Co. v. Young*, 195 Ariz. 22, 28, ¶ 19, 985 P.2d 507, 513 (App.1998).

Mr. Freeman testified that, in approximately 2000, before Sorchych purchased his property, he had a conversation with Sorchych, in which Sorchych "agreed to help" with roadway mainte-

nance. Mrs. Freeman also testified that, sometime after Sorchych purchased his property, "probably in the Spring of 2002," she had a casual discussion "over the back fence" with Sorchych about "neighbor stuff," including the road's deterioration in the previous four or five years, and he agreed to "participate" in bringing the road back up to the standard before that alleged deterioration. She could not remember, however, if she had used the term "expense" in the conversation. Also, Mr. Freeman further testified that later in 2002, when the Freemans chose to begin work on the road, Sorchych indicated he would not contribute to maintenance because he preferred that the road be in a more "rustic" condition. Thus, a reasonable interpretation of the Freemans' testimony, as ostensibly found by the court and supported by the record, was that Sorchych had not agreed to contribute monetarily to maintenance or repair of the road, but that he initially offered to assist in maintaining the road, and he rescinded that offer in 2002, before the Freemans had substantially relied on any alleged agreement.

Moreover, consistent with the court's understanding of the Freemans' testimony, Sorchych asserted in his answer to the First Amended Complaint that he had not approved or agreed to contribute payment for the roadway's maintenance and repair, but that he had offered his efforts and the reasonable use of his tractor for such maintenance and repair. Additionally, in his testimony at trial, Sorchych denied discussing the topic of contributing monetarily to maintenance with the Freemans.

neys' fees in the amount of $5,000.00 to Sorchych.

¶ 10 The Freemans filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## STANDARD OF REVIEW

¶ 11 We are bound by the trial court's findings of fact unless those findings are clearly erroneous. *Farmers Ins. Co.*, 195 Ariz. at 28, ¶ 19, 985 P.2d at 513. Additionally, we will not disturb the trial court's judgment dismissing the Freemans' claims absent an abuse of discretion. *See City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 180, ¶ 16, 181 P.3d 219, 227 (App.2008). To the extent the trial court's decisions were based on an interpretation and application of the law, we review those decisions *de novo. See Hall v. Lalli*, 194 Ariz. 54, 57, ¶ 5, 977 P.2d 776, 779 (1999); *State Comp. Fund v. Yellow Cab Co.*, 197 Ariz. 120, 122, ¶ 5, 3 P.3d 1040, 1042 (App.1999).

## ANALYSIS

¶ 12 The Freemans argue that the trial court erred in entering judgment in favor of Sorchych on their claims for contribution and unjust enrichment. They contend that, as the beneficiary of a roadway easement that provides the only means of ingress and egress to his home, Sorchych must share in the expense of maintaining the roadway in an amount proportionate to his use.

### I. Contribution

¶ 13 The Freemans first contend that the trial court erred in denying their contribution claim. In this case, the document conveying the easement does not expressly provide for a duty to repair or maintain the easement, and the parties have no agreement regarding such obligation. Nonetheless, we conclude that the owners of the easement have the shared duty to repair and maintain the easement.

¶ 14 In Arizona, contribution is an equitable remedy that has been recognized by the Arizona courts and legislature in limited circumstances, most notably in the insurance and tort contexts. *See, e.g., Cal. Cas.*

*Ins. Co. v. Am. Family Mut. Ins. Co.*, 208 Ariz. 416, 417–18, 422, ¶¶ 1–2, 24, 94 P.3d 616, 617–18, 622 (App.2004); *Mut. Ins. Co. of Ariz. v. Am. Cas. Co. of Reading Pa.*, 189 Ariz. 22, 26, 938 P.2d 71, 75 (App.1996); *Am. Cont'l Ins. Co. v. Am. Cas. Co. of Reading Pa.*, 183 Ariz. 301, 302, 903 P.2d 609, 610 (App.1995); *W. Agric. Ins. Co. v. Indus. Indem. Ins. Co.*, 172 Ariz. 592, 595, 838 P.2d 1353, 1356 (App.1992); see also A.R.S. §§ 12–2501 to –2509 (2003) (adopting the Uniform Contribution Among Tortfeasors Act). *See also Fischer v. Sommer*, 160 Ariz. 530, 531, 774 P.2d 834, 835 (App.1989) (recognizing the right of a former spouse to seek contribution for payment of community debts not allocated by the divorce decree). However, Arizona has not previously addressed contribution as an equitable remedy permitting one dominant tenant to require another dominant tenant to contribute to repair and maintenance of an easement.

¶ 15 Nonetheless, as Sorchych himself acknowledges, Arizona courts may modify common law that appears unjust or out of step with the times. *See Villareal v. State Dep't of Transp.*, 160 Ariz. 474, 477, 774 P.2d 213, 216 (1989) (citing *City of Glendale v. Bradshaw*, 108 Ariz. 582, 584, 503 P.2d 803, 805 (1972)). In the absence of controlling statutory or case authority, Arizona courts generally follow the Restatement of the Law on a particular subject if its position, as applied to the claim at issue, "is logical, furthers the interests of justice, is consistent with Arizona law and policy, and has been generally acknowledged elsewhere." *Ramirez v. Health Partners of S. Ariz.*, 193 Ariz. 325, 332, ¶ 26, 972 P.2d 658, 665 (App. 1998) (citing *Ft. Lowell–NSS Ltd. P'ship v. Kelly*, 166 Ariz. 96, 800 P.2d 962 (1990); *Cannon v. Dunn*, 145 Ariz. 115, 116, 700 P.2d 502, 503 (App.1985)). Further, Arizona courts routinely look to guidance from courts of other states on matters of first impression. *See, e.g., Tritschler v. Allstate Ins. Co.*, 213 Ariz. 505, 513, ¶ 20, 144 P.3d 519, 527 (App. 2006) (citing *Hull v. DaimlerChrysler Corp.*, 209 Ariz. 256, 258, ¶ 10, 99 P.3d 1026, 1028 (App.2004)).

¶ 16 Relying on a portion of comment (b) to § 485 of the Restatement (First) of Property ("Restatement (First)") (1944), the Freemans contend that dominant easement owners must share in the maintenance and repair costs of an easement even absent language in the conveyance document imposing such an obligation and even absent an agreement between the parties to share in the costs. The text of § 485 provides, "In the case of an easement created by conveyance, the existence and the exten[t] of any privilege and any duty of the owner of the easement to maintain, repair and improve the condition of the servient tenement for the purpose of increasing the effective uses of the easement or protecting the interests of the possessor of the servient tenement are determined by the conveyance." Thus, § 485 itself stands simply for the general rule of law that the rights and duties of parties to a conveyance are determined by the terms of the conveyance itself.

¶ 17 Nonetheless, the portion of comment (b) relied on by the Freemans states, "If the language of a conveyance creating an easement is so indefinite as not clearly to provide for a duty to repair, the inference to be drawn is that such duty as exists is upon the owner of the easement." Restatement (First) § 485 cmt. b. Courts relying on this language have generally found that, in the absence of an agreement to the contrary, as between dominant and servient landowners, a dominant owner has not only the right, but

the duty, to maintain and repair the easement despite the lack of an express provision mandating that duty. *See, e.g., Triplett v. Beuckman,* 40 Ill.App.3d 379, 352 N.E.2d 458, 460 (1976); *Christmas v. Virgin Islands Water & Power Auth.,* 527 F.Supp. 843, 848 (D.Virgin Islands 1981).[9]

¶ 18 Paragraph (b) continues on, however, to make clear that it addresses rights and responsibilities as between the servient and dominant tenants, not two dominant tenants, and it indicates that, under the Restatement (First), no implied duty exists for a dominant tenant to maintain and repair an easement for his or her own benefit:

> Despite the fact that nongratuitous conveyances of easements are construed favorably to the conveyee, it is not assumed, even in the case of such conveyances, that a conveyor agrees to maintain or repair the premises subject to the easement for the purpose of enabling the conveyee to enjoy the uses authorized by it. If any such duty exists, it is assumed to be on the owner of the easement. *The duty on him is limited in character, however, for there is, of course, no duty to maintain and repair for his own benefit.* The duty is for the benefit of the owner of the servient tenement and goes only to the extent of requiring the owner of an easement to so maintain and repair the premises subject to the easement as to prevent unreason-

9. *See also Seymour v. Harris Trust & Sav. Bank of Chicago,* 264 Ill.App.3d 583, 201 Ill.Dec. 553, 636 N.E.2d 985, 994 (1994) (stating that, in the absence of an agreement to the contrary, the owner of an easement has not only the right but the sole duty to keep the easement in repair); *Lynch v. Keck,* 147 Ind.App. 570, 263 N.E.2d 176, 183 (1970) (holding that owners of a dominant estate had a duty to keep the easement in a proper state of repair to avoid damaging the servient estate through erosion); *Island Improvement Ass'n of Upper Greenwood Lake v. Ford,* 155 N.J.Super. 571, 383 A.2d 133, 134–35 (1978) (holding that individual property owners holding an express easement to use roads in a privately developed residential area, rather than the voluntary non-profit association organized to raise funds to maintain the roads, were obligated to contribute to the repair and maintenance of those roads); *Ingling v. Pub. Serv. Elec. & Gas Co.,* 10 N.J.Super. 1, 76 A.2d 76, 81 (1950) (holding that the dominant tenement, a power

company, rather than the servient tenement, had affirmative duties of inspection and repair related to its easement); *Green v. Duke Power Co.,* 305 N.C. 603, 290 S.E.2d 593, 598 (1982) (same); *Meadow Run & Mountain Lake Park Ass'n v. Berkel,* 409 Pa.Super. 637, 598 A.2d 1024, 1027 (1991) (holding that repair and maintenance costs for common roads and other common areas were the responsibility of the residential users and not the homeowners' association that held title to the roads); *Carson v. Jackson Land & Mining Co.,* 90 W.Va. 781, 111 S.E. 846, 848 (1922) (holding that the duty to maintain an easement was upon those entitled to its use rather than upon the servient estate). *Cf. Papa v. Flake,* 18 Ariz.App. 496, 498, 503 P.2d 972, 974 (1972) (not relying on the Restatement (First), but recognizing that a dominant easement owner, using due care to not needlessly increase the burden of a servient estate, has the right to enter that servient estate at reasonable times to effect necessary repairs and maintenance).

able interference with the use of the servient tenement by the possessor of it.

Restatement (First) § 485 cmt. b (emphasis added).

¶ 19 More recently, however, § 4.13 of the Restatement (Third) has addressed the rights and responsibilities of maintaining and repairing an easement as between two or more dominant tenants:

Unless the terms of a servitude determined under § 4.1 provide otherwise, duties to repair and maintain the servient estate and the improvements used in the enjoyment of a servitude are as follows:

. . . .

(4) The holders of separate easements or profits who use the same improvements or portion of the servient estate in the enjoyment of their servitudes have a duty to each other to contribute to the reasonable costs of repair and maintenance of the improvements or portion of the servient estate.[10]

Restatement (Third) § 4.13(4) (footnote added).[11]

¶ 20 Further, common law from other states has developed addressing the responsibility of tenants using an easement regardless of their status as servient or dominant tenant. These cases set forth a general principle that a party having rights to use an easement should share in the maintenance and repair expense for that easement. *See Barnard v. Gaumer*, 146 Colo. 409, 361 P.2d 778, 781 (1961) (noting that "the burden of upkeep should be distributed between dominant and servient tenements in proportion to their relative use of the road, as nearly as

such may be ascertained"); *Story v. Bly*, 217 P.3d 872, 878–79 (Colo.Ct.App.2008) (relying on § 4.13 of the Restatement (Third)); *Lakeland Prop. Owners Ass'n v. Larson*, 121 Ill. App.3d 805, 77 Ill.Dec. 68, 459 N.E.2d 1164, 1170 (1984) (recognizing that, "where a grantee has an easement which he shares with others, his duty to repair and maintain it must be apportioned with all other easement holders based upon the extent of the individuals' use of the easement"); *Larabee v. Booth*, 463 N.E.2d 487, 492 (Ind.Ct.App. 1984) (concluding that, when a dominant and servient tenant both use an easement, the court may apportion the cost of repairs between them); *Bina v. Bina*, 213 Iowa 432, 239 N.W. 68, 71 (1931) (allocating specific percentage shares of responsibility among the easement users); *Drolsum v. Luzuriaga*, 93 Md.App. 1, 611 A.2d 116, 125 (1992) (remanding for the trial court to consider the use and benefit of a relocated easement in effecting an equitable distribution of the burden of relocation); *Marvin E. Nieberg Real Estate Co. v. Taylor–Morley–Simon, Inc.*, 867 S.W.2d 618, 623 (Mo.Ct.App.1993) ("[T]he general rule is that all users should contribute to maintenance in proportion to their use."); *Cohen v. Banks*, 169 Misc.2d 374, 642 N.Y.S.2d 797, 800 (N.Y.Just.Ct.1996) (holding that the dominant and servient estates, which made common and equal use of the main water line, should be equally responsible for the cost of repair); *Lindhorst v. Wright*, 616 P.2d 450, 454–55 (Okla.App.1980) ("In this case the duty and cost of maintenance should be equitably distributed among both the servient tenants and dominant tenant because their use is mutual."); *Marsh v. Pullen*, 50 Or.App. 405, 623 P.2d 1078, 1080

---

10. Comment (e) to § 4.13 of the Restatement (Third), entitled *"Maintenance and repair obligations among holders of separate easements, subsection (4),"* further explains in part as follows:

The holders of separate easement rights to use the same improvements are obligated to contribute to the reasonable costs of repair and maintenance of the portion of the servient estate or the improvements used in enjoyment of the servitude. The rule stated in this section governs the relationship among the servitude beneficiaries. . . . [O]nce repair or maintenance is reasonably undertaken by one or more of the servitude beneficiaries, the others have a duty to contribute to the reasonable costs. The responsibility of each user should reflect a fair

proportion of the costs. The basis of fair apportionment will vary depending on the circumstances. Factors that may be relevant include the amount and intensity of actual use and the value of other contributions made by the users to improvement and maintenance of the easement or profit.

11. This court has previously relied on § 4.13 of the Restatement (Third). *See Strawberry Water Co. v. Paulsen*, 220 Ariz. 401, 409, ¶ 20, 207 P.3d 654, 662 (App.2008) (recognizing that the dominant easement owner, not the servient estate owner, bears responsibility for maintaining an easement) (review denied Apr. 20, 2009).

(1981) (remanding to apportion the costs of maintaining the easement); *Hayes v. Tompkins*, 287 S.C. 289, 337 S.E.2d 888, 891 (1985) (considering the burden, benefit, and use of the easement in apportioning maintenance and repair costs); *Hart v. Hart*, 27 Va.App. 46, 497 S.E.2d 496, 502 (1998) (apportioning the costs of maintaining and repairing easements between the parties to a divorce).[12]

¶ 21 Additionally, in the case of multiple dominant easement owners, such owners may be required to share in the cost to repair and maintain an easement, even absent language requiring such in the conveyance or an express agreement. *See, e.g., Island Improvement Ass'n*, 383 A.2d at 134–35 (finding "compelling equitable reasons" to "declar[e] the obligation of all the individual owners to contribute to the repair and maintenance of the easement in question").

¶ 22 Many courts recognizing the obligation of contribution have concluded that contribution should be based on each party's proportionate use of the easement. *See Barnard*, 361 P.2d at 781; *Lakeland Property Owners Ass'n*, 77 Ill.Dec. 68, 459 N.E.2d at 1170; *Bina*, 239 N.W. at 71; *Marvin E. Nieberg Real Estate Co.*, 867 S.W.2d at 623; *Cohen*, 642 N.Y.S.2d at 800; *Marsh*, 623 P.2d at 1080; *Hart*, 497 S.E.2d at 502. Other courts have indicated that contribution should be based on an "equitable" apportionment that might consider various factors, including use and benefit. *See generally Larabee*, 463 N.E.2d at 492 (citing with approval cases supporting a proportionate use analysis and cases supporting an equitable division); *Drolsum*, 611 A.2d at 125; *Lindhorst*, 616 P.2d at 454–55; *Hayes*, 337 S.E.2d at 891.

¶ 23 Further, a defendant should receive notice and a reasonable opportunity to participate in decisions regarding repairs and maintenance before liability attaches. *See Quinlan v. Stouffe*, 355 Ill.App.3d 830, 291 Ill.Dec. 305, 823 N.E.2d 597, 606 (2005); *Cohen*, 642 N.Y.S.2d at 800. Also, the duty to pay should be imposed only for necessary and reasonable maintenance and repairs, *see Quinlan*, 291 Ill.Dec. 305, 823 N.E.2d at 606; *Lakeland Property Owners Ass'n*, 77 Ill.Dec. 68, 459 N.E.2d at 1170,[13] performed adequately and properly and at a reasonable price. *See Cohen*, 642 N.Y.S.2d at 800.

■■■ ¶ 24 Applying the foregoing principles to this case, we conclude that, absent the creation of a duty expressly in the conveyance document or by other contract, the doctrine of equitable contribution should be extended to permit one dominant tenant to require another dominant tenant to contribute to the necessary repair and maintenance of an easement if both tenants are using the easement. Consequently, the Freemans and Sorchych have a shared obligation for the necessary maintenance and repair of the roadway easement even absent language in the conveyance imposing such an obligation and even absent a cost-sharing agreement between the parties. Our decision does not, however, mandate an equal or "fifty/fifty" sharing agreement. Instead, each party's contribution should be based on an equitable apportionment determined after consideration of various relevant factors, which may include but are not limited to each party's proportionate use of the easement, including the amount and intensity of actual use, and the benefits derived therefrom[14]; whether each party received proper notice and a reasonable opportunity to participate in the decisions regarding repairs and maintenance; whether the completed work was reasonable

---

**12.** But see *Borgel v. Hoffman*, 219 Pa.Super. 260, 280 A.2d 608, 610 (1971) (declining to impose a sharing rule among easement users who were both dominant and servient tenants of the same easement in a tort case in which the plaintiff fell on that portion of the easement located on the defendant's property and the defendant sought to join as additional defendants other dominant tenants sharing that easement).

**13.** *Cf. Thurston Enters., Inc. v. Baldi*, 128 N.H. 760, 519 A.2d 297, 302 (1986) (recognizing that "the owner of an easement cannot materially increase the burden of it upon the servient estate" (quoting *Crocker v. Canaan Coll.*, 110 N.H. 384, 268 A.2d 844, 847 (1970))).

**14.** Obviously, in some cases, a party's use may be sporadic or vary depending on the time of the year. Also, for example, a private individual's use might be much less than that of a large family with many visitors or someone with an on-site business that draws a large number of customers.

and necessary; whether the repairs and maintenance were performed adequately, properly, and at a reasonable price; the value of any other contributions (monetary or in kind) by the parties to repairs and maintenance; and any other factors that may be deemed relevant.[15] *See generally Healy v. Onstott*, 192 Cal.App.3d 612, 617, 237 Cal. Rptr. 540 (1987) (stating that "the trier of fact must be allowed to fashion any reasonable contribution scheme"). We therefore vacate that portion of the judgment denying the Freemans' claim for contribution and remand for a determination of the parties' equitable apportionment.

¶ 25 Sorchych argues that our adoption of the approach advocated by the Restatement (Third) might invite lawsuits among neighbors, in part because only a generalized standard for contribution will exist, and it should be the legislature's burden to address this issue. Although the issue of contribution has been addressed legislatively in some states, *see* Cal. Civ.Code § 845 (West 2007) (requiring that owners of an easement share costs of maintenance and repair); Ga.Code Ann. § 44-9-45 (West 2010) (providing that a condemnor or successors in title must maintain a private way or else it shall be deemed abandoned), it has largely remained the province of the courts. Certainly, if our legislature wishes to address this issue, it has the ability to do so. At the same time, however, we are not precluded from addressing the issue of contribution, and we conclude that our decision is sound policy because it will help to ensure that dominant landowners pay their equitable share for the use of jointly held property and may promote agreements among neighbors as a prospective method of avoiding disputes and litigation, thereby creating more certainty for landowners, real estate agents, and prospective buyers as to their rights and obligations. Nothing in this opinion, however, should be construed as expanding the rights of a dominant tenement with regard to its permitted use of an easement. *See Thurston Enters.*, 519 A.2d at 302. Further, our holding adopting the doctrine of equitable contribution in this case should not be construed as addressing, much less expanding, tort liability among landowners. *See generally Borgel*, 280 A.2d at 609–10.

## II. *Unjust Enrichment*

¶ 26 The Freemans also argue that the trial court erred in denying their claim for unjust enrichment. We find no abuse of the trial court's discretion.

¶ 27 To recover under a theory of unjust enrichment, a plaintiff must demonstrate five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law. *City of Sierra Vista v. Cochise Enters., Inc.*, 144 Ariz. 375, 381–82, 697 P.2d 1125, 1131–32 (App.1984) (citing *A & A Metal Bldgs. v. I–S, Inc.*, 274 N.W.2d 183 (N.D.1978)). Thus, a plaintiff must demonstrate that the defendant received a benefit, that by receipt of that benefit the defendant was unjustly enriched at the plaintiff's expense, and that the circumstances were such that in good conscience the defendant should provide compensation. *See Murdock–Bryant Constr., Inc. v. Pearson*, 146 Ariz. 48, 53, 703 P.2d 1197, 1202 (1985) (citing *Pyeatte v. Pyeatte*, 135 Ariz. 346, 352, 661 P.2d 196, 202 (App.1983)). "However, the mere receipt of a benefit is insufficient" to entitle a plaintiff to compensation. *Id.* at 54, 703 P.2d at 1203. Instead, for an award based on unjust enrichment, a plaintiff must show "that it was not intended

---

15. As Sorchych notes, "[t]he parties in this case have entirely different views as to what is appropriate or necessary maintenance and repair." Of course, the previous condition of the roadway easement, the necessity of the work to meet any previously established minimum standards for the roadway's condition, whether by ostensibly allowing the road to fall into a state of disrepair the parties or their predecessors waived or "abandoned" any rights (and concomitant obligations) or established new standards with regard to the road, whether the work really constituted improvements rather than maintenance and repairs, the nature and extent of the work performed, the purpose(s) of the funds expended by the Freemans, whether the parties are subject to the same regulations, and whether any equitable offset exists for the value of maintenance and repair work performed or otherwise contributed by Sorchych are contested issues of fact in this case that may need to be addressed in apportioning repair and maintenance costs.

or expected that the services be rendered or the benefit conferred gratuitously, and that the benefit was not 'conferred officiously.'" *Id.* (quoting *Pyeatte*, 135 Ariz. at 353, 661 P.2d at 203).

¶ 28 At trial, Mr. Freeman testified, and the court found, that the Freemans would have spent exactly the same amount had Sorchych not owned property in the area; in other words, none of the expenditures contributed by the Freemans were made solely to benefit access to Sorchych's home. Further, the Freemans presented no evidence that Sorchych's use of the roadway caused maintenance or repairs to be performed on a more regular basis. Instead, Mr. Freeman's testimony and the other evidence provided support the conclusion that the Freemans' expenditures were solely to maintain, repair, or improve the roadway for their own purposes, and any benefit to Sorchych was simply a by-product of their contribution.[16] Accordingly, the Freemans did not demonstrate that having the roadwork performed at their request was done to their detriment. Further, our decision regarding the first issue raised by the Freemans, contribution, ensures that there is no absence of an equitable remedy in this case.

¶ 29 Given the facts presented in this case, we conclude that the trial court did not abuse its discretion in concluding that the Freemans failed to establish the necessary elements for their unjust enrichment claim by showing that they expended funds to their detriment and for Sorchych's benefit.

### III. The Trial Court's Award of Attorneys' Fees

¶ 30 After Sorchych filed a motion for reconsideration seeking attorneys' fees pursuant to Rule 77(f)(2), Ariz. R. Civ. P., the trial court granted his motion and awarded attorneys' fees to him in the amount of $5,000.00. The Freemans argue that the trial court erred in granting Sorchych's request for attorneys' fees because, after they appealed the arbitrator's decision that denied all of their claims, they obtained partial summary judgment against Sorchych for $2,162.18 on their tortious interference claim, and they maintain that judgment must be included in evaluating whether the judgment they obtained in the trial court was at least twenty-three percent more favorable to them than the judgment granted by the arbitration award.[17] Sorchych asserts that because the case was ultimately split into two separate parts involving (1) the tortious interference with contract claim, and (2) the remaining equitable claims involving contribution and unjust enrichment, the separate judgments must be evaluated independently. Because we vacate the judgment before us in part and remand for further proceedings, we also at this time vacate the trial court's award of attorneys' fees. Consequently, we need not and do not address this issue.

### IV. Costs and Attorneys' Fees on Appeal

¶ 31 Both sides request an award of costs and attorneys' fees on appeal. We decline to award attorneys' fees to either side. The Freemans fail to cite a basis for their attorneys' fees request, and Sorchych cites only Rule 21, ARCAP, which merely sets forth the procedure for requesting attorneys' fees and may not be cited as a substantive basis for an award of fees. *See Tilley v. Delci*, 220 Ariz.

---

16. The testimony also created a question of fact as to the extent to which Sorchych received a benefit. Mr. Freeman testified that, to his knowledge, all of Sorchych's vehicles were four-wheel drive, and that not only did Sorchych refuse to contribute monetarily to the roadwork because he purportedly "liked the road rustic," but he actually "made a pest of himself" by consistently complaining about the roadwork being conducted at the Freemans' direction. Sorchych testified that it was his intent to keep the roadway "primitive" to reduce third-party travel on the road, and that, when necessary, he would use his tractor or hire a third party at his expense "to maintain passability, which is all I

cared about." He further testified that, from the onset, he disagreed with the Freemans regarding the necessity of much of the roadway work completed at the Freemans' direction and that he believed "the road is not as safe" due to the changes made.

17. *See* Ariz. R. Civ. P. 77(f); *see also Farmers Ins. Co. v. Tallsalt*, 192 Ariz. 129, 130, ¶ 8, 962 P.2d 203, 204 (1998) ("[I]n order for the appellant of an arbitration award of $0 to avoid paying the appellee's attorneys' fees, the appellant must obtain a judgment of more than $0.").

233, 239, ¶ 19, 204 P.3d 1082, 1088 (App.2009) (citing *Smyser v. City of Peoria,* 215 Ariz. 428, 442, ¶ 50, 160 P.3d 1186, 1200 (App. 2007)); *Country Mut. Ins. Co. v. Fonk,* 198 Ariz. 167, 172, ¶ 25, 7 P.3d 973, 978 (App. 2000) (denying a request for attorneys' fees on appeal because the party failed to state any substantive basis for the request). Further, in light of our decision, this case is not over. We do, however, award the Freemans their costs on appeal subject to compliance with Rule 21. *See Nangle v. Farmers Ins. Co. of Ariz.,* 205 Ariz. 517, 523, ¶ 34, 73 P.3d 1252, 1258 (App.2003).

### CONCLUSION

¶ 32 For the aforementioned reasons, we affirm in part and vacate in part the trial court's judgment in favor of Sorchych and remand for supplemental proceedings consistent with this decision.

CONCURRING: PATRICIA K. NORRIS and PATRICK IRVINE, Judges.